## HENRY B. SCHAFFNER *vs.* JOHN YOUNG.

### Opinion filed May 24, 1901.

**Sheriffs—Extraterritorial Acts—Trespassers—Injunction—Complaint—Allegations—Statutes.**

Action in equity to enjoin the defendant, who claimed to act officially as sheriff of Mercer county, from selling certain personal property belonging to the plaintiff, and which defendant had seized to satisfy an alleged personal tax charged against plaintiff on the tax lists of Mercer county. The defendant seized the plaintiff's property within the county of Williams, and did so under pretended authority contained in a warrant of distraint issued by the treasurer of Mercer county. *Held,* that the defendant, in seizing the plaintiff's property was a tresspasser, and that his usurpation of authority outside of his county was of such a nature as could be enjoined by a court of equity. But the complaint omitted to allege issuable facts to show that the trespass of the defendant was one which would cause irreparable damage to the plaintiff; nor did the complaint set out issuable facts sufficient to bring the case within any recognized head of equity. *Held,* that the facts alleged did not constitute a cause of action for equitable relief by injunction.

**Unconstitutional Enactment.**

Construing Chap. 25, Laws 1895, and Chap. 57, Laws 1899, *held,* that Chap. 57, Laws 1899, in so far as it attempted to change the boundaries of counties, is unconstitutional and void, because the same omitted any provision for submitting the law to the voters for approval. See § 168, Const.

**Counties—Change of Boundaries.**

For reasons set out in the opinion, the boundaries of the counties of Billings, Stark, and Mercer were not changed or affected by the passage and approval of either of the statutes embraced in said Chaps. 25 and 57.

Appeal from District Court, Mercer County; *Winchester, J.*

Bill by Henry B. Schaffner against John Young, as sheriff of Mercer county, to restrain the latter from levying on complainant's property for taxes. From a judgment in favor of defendant, plaintiff appeals.

Affirmed.

*F. H. Register, James B. Kerr* and *J. B. McNamee,* for appellant.

Section 3, Chap. 25, Laws of 1895, purported to increase the area of Mercer county by including therein twenty-four townships belonging within the unorganized county of Williams. This act was held unconstitutional. *Richards* v. *Stark County,* 8 N. D. 392, 79 N. W. Rep. 863. Chap. 57 of the Laws of 1899, was passed to meet the difficulties presented by the isuues in the Richards case. Where the law under which a tax is imposed is in conflict with the constitution of the state, a court of equity will entertain jurisdiction by

injunction to prevent the enforcement and collection of the taxes. High on Injunctions, § 490; *Bristol* v. *Johnson,* 34 Mich. 123; *Gage* v. *Graham,* 57 Ill. 144; *Knowlton* v. *Supervisors,* 9 Wis. 410. If there is a total want of authority to levy the tax, relief by injunction may properly be allowed. *Town of Lebanon* v. *Ry. Co.,* 77 Ill. 539; *Kimball* v. *Company,* 89 Ill. 611; *Marsh* v. *Supervisors,* 42 Wis. 502; *Salscheider* v. *City,* 45 Wis. 519. Where, under a mistake, personal property of a railroad company is taxed in the wrong locality an injunction will be allowed. *Mohawk Co.* v. *Clute,* 4 Paige 384; *Chicago Etc. Ry. Co.* v. *Cole,* 74 Ill. 591. Relief is granted for the purpose of preventing the enforcement of a tax by a municipality other than that to which the property assessed rightfully belongs. High on Injunctions, § 540; *Union Pac. Ry. Co.* v. *Carr,* 1 Wy. 96; *Dorn* v. *Fox,* 61 N. Y. 264. Plaintiff is not estopped from complaining of the levy and assessments of taxes by the payment of taxes levied for state purposes. Plaintiff having delayed seeking relief until his property is advertised for sale, does not constitute such laches or acquiescence as to debar him from relief by injunction. High on Injunctions, § 550; *Holland* v. *Mayor,* 11 Md. 186; *Mayor* v. *Grand Lodge,* 44 Md. 436; *Stroesser* v. *City of Fort Wayne,* 100 Ind. 443; *Longworthy* v. *City,* 13 Ia. 86; *City* v. *Combs,* 16 O. 181; *Greencastle* v. *Black,* 5 Ind. 557; *Armstrong* v. *City,* 36 Kan. 432, 13 Pac. Rep. 843; *Storey* v. *Murphy,* 81 N. W. Rep. 23. Chap. 57 of the Laws of 1889, is unconstitutional. The legislature cannot validate void legislation. *Reading* v. *Savage,* 120 Pa. St. 198; *Stange* v. *Dubuque,* 62 Ia. 303; *Kimball* v. *Rosendale,* 42 Wis. 407; *Cain* v. *Goda,* 84 Ind. 209; *Strosser* v. *Ft. Wayne,* 100 Ind. 443. This act is void for the reason that it fails to provide for the submission to a vote of the qualified electors the proposed change in the county boundaries. § 168, Const.; *Wayne County* v. *Cobb,* 52 N. W. Rep. 1102. The vote of the electors taken under the unconstitutional act of 1895 was not sufficient compliance with the constitution. Cooley's Const. Lim. (5 Ed.) 224; *Clark* v. *Wallace Co.,* 39 Pac. Rep. 225; *Cahoon* v. *Iron Gate Co.,* 23 S. E. Rep. 767; *Meagher* v. *County of Storey,* 5 Nev. 251; *State* v. *Baker,* 31 S. W. Rep. 924; *Smith* v. *Sherry,* 50 Wis. 210; *Smith* v. *Sherry* 54 Wis. 114; *Lane* v. *Nelson,* 79 Pa. St. 407; *Richards* v. *Rote,* 75 Pa. St. 248, 256; *State* v. *Commissioners of Garfield Co.,* 38 Pac. Rep. 559; Sutherland on Statutory Construction, § 41.

*E. C. Rice, Cochrane & Corliss,* for respondent.

A court of equity will not hamper the administration of government by restraining the collection of a tax where the citizen has a remedy for the collection of the same by suit if he has paid the same. 1 High on Injunctions, § 505. The illegality of the tax alone, or the threat to sell if it is satisfied, cannot, of themselves, furnish any ground for equitable interposition. The party must find his remedy in the courts of law. Cooley on Taxation, 536; 2 Dillon's

Municipal Corporations (3 Ed.) 924; *Wason* v. *Magor*, 50 Pac. Rep. 741; *Lincham Etc. Co.* v. *Pendergas*, 70 Fed. Rep. 1; *Dows* v. *Chicago*, 11 Wall. 109; *Railway Co.* v. *Cheyenne*, 113 U. S. 526; *Shelton* v. *Platt*, 139 U. S. 594; *City* v. *Johnson*, 51 Pac. Rep. 1004; *Insurance Co.* v. *Bonner*, 49 Pac. Rep. 366; *Hall* v. *Fayetteville*, 20 S. E. Rep. 373; *St. Anthony & Dak. Elev. Co.* v. *Bottineau County*, 83 N. W. Rep. 212, 9 N. D. 346; *Erskine* v. *VanArsdale*, 15 Wall 77. Restraining the collection of this tax would, of course, affect every other case of property situated as plaintiff's was in the territory sought to be brought by the act of 1895 within the limits of the three counties named in that act. The court therefore should be extremely cautious in awarding on the complaint of an individual which may reach the cases of others not complaining and embarrass the operations of the government. Cooley on Taxation, 536. The financial condition of the county is not vital, as it is elementary that the officer collecting the tax is liable himself for the money, and his act being an official one, his bondsmen are likwise responsible. *St. Anthony & Dak. Elev. Co.* v. *Bottineau County*, 83 N. W. Rep. 212, 9 N. D. 346; *Erskine* v. *Van Arsdale*, 15 Wall. 75; *Western Union Tel. Co.* v. *Mayer*, 28 O. St. 521; *Shephan* v. *Dan, iels*, 27 O. St. 527; *Dunnell Mfg. Co.* v. *Newell*, 2 At. Rep. 766; *Shoup* v. *Willis*, 6 Pac. Rep. 124; *DeFremery* v. *Austin*, ·53 Cal. 380; *Atwell* v. *Yeluff*, 26 Mich. 120; *Rumford Chemical Works* v. *Ray*, 34 At. Rep. 814; *Lindsay* v. *Allen*, 36 At. Rep. 840; *Wood* v. *Stirman*, 37 Tex. 584; *Powder River Cattle Co.* v. *Board of Comrs.*, 29 Pac. Rep. 361; *Board of Comrs.* v. *Searight*, 31 Pac. Rep. 268. Mercer county is a de-jure corporation within its original boundaries, and it is a de facto corporation within the new boundaries. The only way to oust the corporation from acting as a corporation over this new area is by an act of *quo warranto*. In this suit no such judgment can be secured. If plaintiff is successful it does not preclude Mercer county from establishing, in a direct suit brought to test its right to act as a corporation over the disputed territory, that the act of 1895 is constitutional. That *quo warranto* will lie where a municipal corporation is assuming to exercise corporate functions over an enlarged territory, is elementary. *People* v. *Oakland*, 28 Pac. Rep. 807; *State* v. *Fleming*, 44 S. W. Rep. 760; *State* v. *Westport*, 22 S. W. Rep. 888; *State* v. *McMillan*, 18 S. W. Rep. 784; *East Dallas* v. *State*, 11 S. W. Rep. 1030; *People* v. *Peoria*, 46 N. E. Rep. 1075; *State* v. *Cram*, 16 Wis. 343; *People* v. *Maynard*, 15 Mich. 463; 2 Spelling on Extraordinary Remedies, § 1802. Private suitors cannot raise the question whether Mercer county is lawfully exercising powers over the disputed territory, and in a collateral suit involving private interests. The questions must be raised in a direct proceeding, public in character, brought to settle once for all, so as to bind the whole world, the question of the legality of such corporate claim. *Coler* v. *Dwight School Twp.*, 3 N. D. 249; *State* v. *Ry. Co.*, 25

Pac. Rep. 296; *Stuart* v. *School Dist.*, 30 Mich. 69; *Mendenhall* v. *Burton*, 22 Pac. Rep. 558; *City of St. Louis* v. *Shields*, 62 Mo. 247; *Wason* v. *Magor*, 50 Pac. Rep. 741. *Richards* v. *Stark Co.*, 8 N. D. 392, in which the court held against the constitutionality of the act of 1895, was a direct proceeding by *quo warranto* attacking the right of Stark county to act as a corporation over the disputed territory.

WALLIN, C. J.   This is an action in equity brought to enjoin the defendant, who is sheriff of Mercer county, from selling certain personal property belonging to the plaintiff, which property the defendant, under a warrant of authority issued by the treasurer of said county, had seized and was threatening to sell in satisfaction of certain alleged personal property taxes charged against the plaintiff on the tax lists of Mercer county.   At the commencement of the action the District Court issued a preliminary injunctional order, whereby defendant was restrained from selling said property until the further order of the court.   Later, and by an order dated September 8, 1900, the District Court dissolved and set aside the said preliminary order.   Plaintiff has appealed to this court from said last mentioned order.

The facts in the record, which in our judgment, control the result in this court, are uncontradicted, and they may be briefly stated: The plaintiff's personal property in the years 1897 and 1898 was valued for taxation by one of the qualified and acting assessors of the county of Mercer, and in each of said years the county officials of Mercer county levied taxes for county revenue against the plaintiff, based on such assessments, and such taxes were later extended upon the tax lists of that county.   The warrant of authority under which the defendant seized and distrained the plaintiff's property as above stated was issued by the treasurer of Mercer county, and delivered to the defendant, as sheriff of that county, under the provisions of § 1243 of the Rev. Codes of 1899, relating to the collection of delinquent personal property taxes.   This section authorizes the sheriff, when a delinquent list is delivered to him, if the taxes are not paid on demand, to "distrain sufficient goods and chattels belonging to the person charged with such taxes, if found within the county, to pay the same with the said penalty," etc.   In support of his contention the plaintiff claims that the taxes charged against him on the tax list of Mercer county are absolutely void, for want of authority to levy and extend the same, and this contention rests upon the following state of facts.   It is conceded that at all times in question, and long prior thereto, the plaintiff resided on section 10 of township No. 142 N., of range 92 W., and that the property of plaintiff assessed by the assessor of Mercer county in 1897 and 1898 as above stated, was and ever since has been in the possession and custody of the plaintiff at his said place of residence.   It is conceded that the plaintiff's place of residence was originally located within the county of Williams, which county is claimed by both par-

ties to have been an unorganized county adjoining the county of Mercer. The defendant, however, claims that said town and range upon which plaintiff resides, together with some 23 other congressional townships, were detached from Williams county in the year 1895 and incorporated within the county of Mercer by an act of the legislative assembly which is published as Chap. 25 of the Laws of 1895. But plaintiff meets this contention by the statement that said act of 1895 is unconstitutional and void, and has been so adjudged by this court in *Richard* v. *Stark Co.,* reported in 8 N. D. 392, 79 N. W. 863; and from this fact the plaintiff argues that it necessarily follows that the act of 1895 did not operate to detach the disputed territory from the county of Williams, and hence that the plaintiff still resides in Williams county, and has not resided in Mercer at any time. The defendant admits that the act of 1895 was held to be void by this court in the case above cited, but defendant claims that the holding of this court was erroneous, and that this court should in the present action reverse its ruling, and declare said act to be a valid and constitutional enactment. But there are objections to any such action on the part of this court which are insurmountable. Without in the least intimating that this court, as now constituted, would favor a reversal of the decision made in *Richard* v. *Stark Co.,* it seems entirely clear that in the present action which is a private controversy arising out of the seizure of plaintiff's property by the defendant, this court, under established rules of procedure, would be without power to make a ruling which would reverse a decision made in a proper action (viz. a *quo warranto* action), in which this court held in effect that the territory here in dispute was never detached from the county of Williams, and that the law assuming to do so was unconstitutional and void. It is, moreover, elementary that the rights of suitors are to be determined by the law existing when the cause of action arose, and such rights cannot, except as to mere rules of procedure and evidence, be measured by a different legal status, created while the action is pending, either by a judicial decision or by a statute. See *Conrad* v. *Smith,* 6 N. D. 337, 70 N. W. 815. The acts complained of in the case at bar, were committed on the 24th day of January, 1900, and this court, in deciding upon the issues involved, must therefore be governed by the law as it existed at that time.

But the defendant further contends that the void act of 1895 has been validated by subsequent legislation, and cites Chap. 57 of the Laws of 1899 to sustain his contention. This last named act took effect on March 9, 1899, and, if it operated to relate back and reenact the law of 1895, then defendant would be within the protection of the later law when he seized the plaintiff's property. But it is obvious that the act of 1899 did not operate to validate the void act of 1895. The act of 1899, including its title, is as follows:

"An act to settle disputes as to county boundaries and to confirm the acts of officials in counties that have exercised jurisdiction over territory not clearly within county boundaries.

"Be it enacted by the legislative assembly of the state of North Dakota:

"Section 1. That all territory within the state of North Dakota over which any county has exercised jurisdiction in civil and criminal matters and which has for all intents and purposes been treated as a portion of such county for not less than two years last past, shall be and the same is hereby declared a part of such county, and all of the official acts and doings of all state, county, township, school, district or other officials within such county in the exercise of such jurisdiction are hereby ratified in so far as to give such acts the same validity as they would have had if such territory had been a part of such county when such acts were performed."

Without commenting upon the fact that this statute embraces two distinct and independent subjects, both of which are expressed in its title, it will suffice to say that the legislature has omitted from the act any provision for submitting the same to the voters of the county concerned for ratification. This omission renders the act unconstitutional and void in so far as it attempts to change the boundaries of Mercer county, which county is conceded to be an organized county. See § 168, Const. To hold the act of 1899 to be a valid enactment would involve, among other anomalies, the absurd conclusion that the statute, which was invalid under one provision of the organic law, could be rehabilitated by a later statute, which is itself unconstitutional under another feature of the organic law.

But defendant's counsel contend further that the act of 1899 embraces a curative feature, and it does attempt to ratify the action of all officers over any territory within the state over which any county for a period of two years "last past" have exercised jurisdiction in both civil and criminal matters, and which territory "has for all intents and purposes been treated as a portion of such county." The defendant insists that the effect of this curative feature of the act of 1899 is to validate the action of the officers of Mercer county in all they did during the years 1897 and 1898, and hence that the taxes in question were, under the operation of this act, in all respects valid. But we deem it unnecessary in the present action to pass upon the interesting questions presented by this contention of counsel. The act of 1899, by its terms, is retrospective only. It does not look forward or attempt to cure or validate any action which might be taken by any officer or officers after the date of its passage. The curative feature of the act, therefore, cannot be made available as a shield for any action taken by this defendant, inasmuch as the acts complained of were not committed by the defendant until a date long subsequent to the approval of the curative act.

Another point made is that the officers of Mercer county, in levying and extending the county and other local taxes of 1897 and 1898,

were acting in entire good faith, and that said taxes were levied and expended long prior to the date at which said statute was held to be invalid by this court. Upon this foundation it is argued that all that was done by the officers of Mercer county in and about the laying of the taxes involved was done by those who were at the time officers de jure of Mercer county, and was done pursuant to a statute which was presumptively valid until the same was annulled by the judgment of this court. To this contention it may be observed that if the action of the officers of Mercer county in 1897 and 1898 in the matter of laying the taxes in these years can be sustained upon the theory that the same was taken pursuant to the terms of the act of 1895, and while the act was presumptively in force, still this theory would be unavailing to the defendant when interposed as a defense in the case at bar. At the time the defendant seized the plaintiff's property he was not, if he ever had been, an officer with jurisdiction as such over the territory in which the plaintiff resided, and in which the property was seized. Long prior to the date of such seizure, and in May, 1899, the act of 1895, under which the officials of Mercer county seek to justify their action, had been adjudged null and void by this court, sitting as a court of last resort. When that decision was handed down, and a rehearing of the case denied, the last vestige or color of authority conferred by the act of 1895 vanished and ceased to exist. No other or further rights could be based upon the statute, nor could the statute be made available to justify any action taken after the same had been annulled by a judicial determination which was final. It must follow that, after the case of *Richard* v. *Stark Co.* was decided, the officers of Mercer county were shorn of any color of authority, either as officers de jure or otherwise, over the territory lying within the boundaries of Williams county and here in dispute. To this should be added another consideration: Under the mandate of the statute the sheriff was required, by the very terms of his warrant to seize the property of the delinquent taxpayers named in the warrant, "if found within the county." Section 1243, Rev. Codes 1899. The sheriff, therefore, was in duty bound to confine his attempts to execute his warrant to the seizure of goods and chattels found within the territorial limits of his own conuty, viz.: the county of Mercer. It follows that, in seizing the plaintiff's property in the county of Williams, the defendant was not acting under the authority of the warrant under which he is seeking to justify the seizure. The warrant can furnish neither authority nor color of authority for a seizure made in Williams county. The sheriff, therefore, was a naked trespasser; and it cannot well be doubted that he seized the plaintiff's property deliberately, and with full knowledge that his acts were illegal. It is entirely certain that he is chargeable with knowledge that his acts were done outside of his own county, and hence that the same were unlawful. The case of *Richard* v. *Stark Co.* was decided after the curative act of 1899 took effect by its terms, and said act is con-

clusively presumed to have been considered by this court in making said decision. In making the seizure, therefore, the defendant was simply a trespasser. Had the seizure been followed by an actual sale of the property, we know of no law whereby the defendant could have been compelled to turn over the proceeds of the sale to any officer in Mercer county. If said curative act could or did operate to validate the levy of the taxes, the same did not operate to validate an unlawful seizure of property located in another county. The act of validation looked backward, and not to acts done in the future.

The considerations already advanced lead to a matter which we regard as controlling. As has been seen, this action is brought in equity, and the relief sought is to enjoin the collection of an alleged tax. The plaintiff claims that such relief may be had in exceptional cases, and that the facts of the present case entitle it to be classed as an exceptional case. Upon the general question whether the injunctional remedy is available to restrain the collection of an illegal or void tax there is abundant authority, but as to the particular circumstances under which this relief will be granted there is a lamentable divergence of judicial opinion, and no end of direct conflict in the cases. It will be conceded, however, that this remedy is, as a general rule, withheld where it is sought to restrain the collection of a personal property tax. In such cases the remedies at law are ordinarily deemed to be adequate, and hence the general rule is that equity will not intervene in such cases. Upon this point, see Cooley, Tax'n, p. 772, and cases in note 2; *Clark* v. *Ganz,* 21 Minn. 387; *Society* v. *Austin,* 46 Cal. 417. The general rule is stated in 2 Dill Mun. Corp. (4th Ed.) § 924, as follows: "Equity will not, according to the rule generally adopted, restrain even an illegal and void tax assessment, where it is sought to be enforced against personal property only." See cases cited in note 1. Nevertheless courts of equity will intervene, even in personal property cases, upon a few grounds if in connection with such grounds the bill or complaint embodies other facts sufficient to bring the case within some acknowledged head of equity. . Among the grounds are the following: (1) Where it appears that the property taxed is exempt from taxation; (2) where the tax is not warranted by any law; (3) where the tax is imposed by officers acting outside of their territorial jurisdiction; (4) where the statute under which the tax is levied is unconstitutional. And there are some other grounds deemed to be sufficient by some courts. We are of the opinion that the case at bar presents ample ground for equitable interference, so far as the mere matter of the tax is concerned. But it is our opinion that the complaint in this action fails wholly to bring the case within the cognizance of a court of equity. There are no facts averred showing that the remedies afforded at law are not adequate. Nothing in the way of facts is alleged tending to show that the seizure and sale of the plaintiff's property would re-

sult in irreparable injury to the plaintiff, nor are issuable facts set out showing that the intervention of a court of equity will or can result in preventing a multiplicity of suits. The only attempt made by the plaintiff to meet this imperative requirement of the law af pleading is found in the following language of the complaint: "That unless the defendant is restrained and enjoined from selling said property, the plaintiff will suffer irreparable injury; * * * That the plaintiff has no other plain, speedy, and adequate remedy; that the said county of Mercer is bankrupt and insolvent, and a judgment against said Mercer county can only be enforced, if at all, after a long number of years; and that its warrants are much depreciated from their face value in the market." We deem these averments wholly insufficient under the authorities. No issuable facts are stated tending to show an irreparable injury to the plaintiff, and no other averments of fact attempt to bring the case within the domain of equity. We regard the averment as to Mercer county both insufficient and unimportant. We think this court cannot assume, upon the facts averred, that said county is insolvent or bankrupt. Under the law, the presumption is very strong that organized counties in this state have resources necessary to meet their financial obligations. But, if it conclusively appeared that Mercer county is bankrupt, that fact does not show or tend to show that the defendant, who committed the trespass without even color of authority from Mercer county, is either insolvent or bankrupt. No fact is alleged bearing at all upon the vital matter of defendant's solvency or insolvency. The legal presumption is that he is solvent. This presumption must prevail in the absence of any contrary showing. It follows, therefore, upon the facts alleged, that the plaintiff has, presumptively, an adequate remedy at law for the trespass complained of. In tax cases the general rule is firmly settled that special facts must be inserted in the bill or complaint calling for equitable relief, and when none such are averred the suitor will be relegated to his legal remedies. See 1 Spell. Extr. Relief, § 658; 2 Desty, Tax'n, p. 667; Cooley, Tax'n, p. 772, and cases in note 2; *Wason* v. *Major,* (Colo. App.) 50 Pac. 741; *Transfer Co.* v. *Pendergas,* 16 C. C. A. 585, 70 Fed. 1; *Shelton* v. *Platt,* 139 U. S. 594, 11 Sup. Ct. 646, 35 L. Ed. 273; *Erskine* v. *Van Arsdale,* 15 Wall. 77, 21 L. Ed. 63. In this state the rule was recognized in an early case where real estate taxes only were involved. See *Farrington* v. *Investment Co.,* 1 N. D. 102, 45 N. W. 191. In that case a majority of the court held that, in addition to showing the illegality of a tax, it must appear that the plaintiff has brought himself within some recognized head of equity. If the rule was applicable in that case, it should for a much stronged reason be applied in the case at bar, where only a personal tax is involved. In this case there was a remedy at law. *Elevator Co.* v. *Bottineau Co.,* 9 N. D. 346, 83 N. W. 212.

We deem it proper to add a few words by way of explanation: In formulating this opinion, certain features of the case found in the

record have been passed upon, which, from the court's point of view, could have been left untouched without affecting the result in this court. Our reason for doing this is that we are very desirous of doing all that we legitimately can do to aid in defining and clarifying the political status of the extensive region of country which is involved in the subject matter of this litigation. In this view, we have emphasized the fact that the boundaries of the counties of Billings, Stark and Mercer were in no wise changed or affected by the act embraced in Chap. 25 of the Laws of 1895, and the additional fact is pointed out that the attempt to relocate the boundaries of said counties by the act embraced in Chap. 57 of the Laws of 1899 was also abortive. The lines of said counties remain intact, and exactly as they were before either of said statutes were enacted. We do not need the assurances of counsel to convince us that the present status in all the territory affected is, to say the least, serious. Indeed, it may be said that in some of its aspects the condition is a little short of chaotic. We would gladly do our part in restoring normal conditions, but the courts are powerless to establish county lines, or add to or take from the territorial area of counties. This can only be done by another branch of the state government. If the true interests of the people living in the regions affected demand that the areas of Billings, Stark and Mercer counties should be enlarged, that can be accomplished only by means of laws constitutionally enacted and ratified by the voters. Nor can this important work be accomplished by the mere makeshift of curative legislation. We can only hope that the decision of this case may aid in defining the situation, to the end that relief, if any relief is needed, may be sought for where it is possible to obtain it, viz: from the legislature. The order appealed from will be affirmed. All the judges concurring.