# BISMARCK WATER SUPPLY COMPANY v. FRANK BARNES, as Sheriff of Burleigh County, et al.

### (153 N. W. 454.)

**Public policy — government — means of conducting — no restriction.**

1. Public policy demands that no needless restriction be placed upon the securing of the necessary means for conducting the government.

**Equity — injunction — taxes — collection — enforcement of — illegal — void — remedy at law.**

2. As a general rule equity will not interfere by injunction with the enforcement or collection of a tax which is alleged to be illegal or void, merely because of its illegality, hardship, or irregularity, but, in addition thereto, facts must be shown to exist bringing the case within some recognized head of equity jurisprudence; otherwise the party aggrieved will be left to his remedy at law.

**Personal property — distraint of, for taxes — injunction — general rule.**

3. As a general rule equity will not enjoin the distraint of personal property for a tax.

---

Note.—As to injunction to restrain the collection of illegal taxes, see notes in 22 L.R.A. 699; 69 Am. Dec. 198; 49 Am. Rep. 287; 23 Am. Rep. 622, and 53 Am. Rep. 110.

As to injunction to prevent collection of tax on excessive assessment, see note in 16 L.R.A. (N.S.) 807.

As to injunction against enforcement of tax laws as affected by other remedies, see note in 8 L.R.A. (N.S.) 125.

**Taxes — collection of — equity — reluctance to interfere — municipality.**

> 4. Courts of equity are more reluctant to interfere with the collection of a state tax than with a tax levied by a municipality.

**Injunction — legal remedy — available.**

> 5. An injunction will not issue where legal remedies are, or have been, available.

**Complaint — evidence — injunctive relief.**

> 6. The complaint and evidence considered, and it is *held* that plaintiff is not entitled to injunctive relief.

Opinion filed May 27, 1915.

From a judgment of the District Court of Burleigh County, Nuessle, J., plaintiff appeals.

Affirmed.

*Engerud, Holt, & Frame,* for appellant.

The plaintiff is entitled to equitable remedy, or to injunction. The value of the personal property taken by the sheriff, as well as any damages suffered, cannot be ascertained and recovered in an action at law. Schaffner v. Young, 10 N. D. 245, 86 N. W. 733; 5 Pom. Eq. Jur. §§ 359, 362.

Where such is the condition, or where the personal property is of such a character that irreparable injury will ensue, the rule is that resort may be had to equitable remedies. Bank of Kentucky v. Stone, 88 Fed. 383, affirmed in 174 U. S. 409, 43 L. ed. 1027, 19 Sup. Ct. Rep. 880; Schaffner v. Young, supra; Southern R. Co. v. Asheville, 69 Fed. 359; Wright v. Southwestern R. Co. 64 Ga. 786; Phelan v. Smith, 22 Wash. 397, 61 Pac. 31; Detroit v. Wayne Circuit Judge, 127 Mich. 604, 86 N. W. 1032; Cummings v. Merchants' Nat. Bank, 101 U. S. 153, 25 L. ed. 903.

County boards of equalization have no jurisdiction to correct individual valuations made by city boards. First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836; Minot v. Amundson, 22 N. D. 236, 133 N. W. 551.

No tender in such cases is necessary before bringing action. Northern P. R. Co. v. McGinnis, 4 N. D. 494, 61 N. W. 1032; Northern P. R. Co. v. Barnes, 2 N. D. 310, 51 N. W. 386; Farrington v. New

England Invest. Co. 1 N. D. 102, 45 N. W. 191; Laws 1903, chap. 157; Rev. Codes 1905, §§ 1623 et seq., Comp. Laws 1913, § 2238.

The court has the right to require the payment of the taxes justly due within a reasonable time, as a condition of relief. Fenton v. Minnesota Title Ins. & Trust Co. 15 N. D. 365, 125 Am. St. Rep. 599, 109 N. W. 363; Powers v. First Nat. Bank, 15 N. D. 466, 109 N. W. 361; State Finance Co. v. Beck, 15 N. D. 380, 109 N. W. 357.

If suit were brought to cancel a specific invalid tax, then tender or offer to pay the valid part of the tax first would be necessary. Powers v. First Nat. Bank, 15 N. D. 466, 109 N. W. 361; Douglas v. Fargo, 13 N. D. 467, 101 N. W. 919.

The statute contemplates that the taxes when not invalid shall be reimposed and resale had. Roberts v. First Nat. Bank, 8 N. D. 513, 79 N. W. 1049; Laws 1903, chap. 158 (Rev. Codes 1905, §§ 1617, 1622, Comp. Laws 1913, §§ 2232, 2237).

No interest or penalty can be exacted. The requirement shall be to pay only to the extent that the taxes are valid. Laws 1903, chap. 157, § 4 (Rev. Codes 1905, § 1623, Comp. Laws 1913, § 2238); Const. § 174.

*H. R. Berndt,* State's Attorney, and *F. E. McCurdy* and *Geo. E. Wallace,* for respondent.

Where the reason for a rule does not exist, the rule itself is suspended. Injunction will not lie, and equity will not interfere, against a distraint of personal property for taxes, as a rule. Schaffner v. Young, 10 N. D. 245, 86 N. W. 733; 5 Pom. Eq. Jur. § 359.

Courts are not instruments to review an assessment for taxes. George C. Bagley Elevator Co. v. Butler, 24 S. D. 429, 123 N. W. 866.

The value of property for taxation purposes is that fixed by the board of equalization. Dakota Loan & T. Co. v. Codington County, 9 S. D. 159, 68 N. W. 314.

There are no limitations on the legislative powers of the legislature except such as are imposed by the state and Federal Constitutions. Re Watson, 17 S. D. 486, 97 N. W. 463, 2 Ann. Cas. 321.

A tax is defined to be a burden imposed by legislative authority to raise money for public purposes. Hanson v. Franklin, 19 N. D. 259, 123 N. W. 386.

The power to raise revenue by taxation is a necessary attribute of sovereignty. Re Lipschitz, 14 N. D. 622, 95 N. W. 157.

CHRISTIANSON, J. This is an action in equity brought to enjoin the defendant Barnes, who is the sheriff of Burleigh county, from enforcing a certain personal property tax levied against plaintiff's property situated in the city of Bismarck, in Burleigh county, for the years 1909 and 1910. The city of Bismarck and the county of Burleigh were also made parties defendant.

The suit was commenced on January 31, 1912, in the district court of Burleigh county. The plaintiff is a foreign corporation organized under the laws of the state of West Virginia, owning and operating the waterworks plant in the City of Bismarck, in Burleigh County, and as far as the pleadings and record in this case show, this is the only property of any kind owned by the plaintiff within the state of North Dakota.

The material allegations of the complaint are substantially as follows: "That the actual cost value of plaintiff's waterworks plant in Bismarck in the years 1909 and 1910 did not exceed the sum of $85,000. That in the year 1909 and ever since that time the municipal government of the city of Bismarck has been and now is vested in a board of five commissioners. That in the month of June, 1909, said board of city commissioners, sitting and acting as the board of equalization of assessments for said city, fixed the value of this plaintiff's said water supply plant, and assessed the same for the purpose of taxation at the sum of $40,500, and thereafter at the regular meeting of the state board of equalization of assessments for the state of North Dakota in said year, said state board increased the valuation and assessments of all property in the state 12½ per cent, thereby increasing this plaintiff's assessments to the sum of $45,562, and thereupon the annual tax levies for said year were made by the respective taxing officers for the respective purposes provided by law, the taxes for said year for all purposes were imposed and charged upon and against plaintiff's said property and computed and fixed on the basis of said assessment of $45,562, resulting in an aggregate tax in the sum of $2,237.09. That in the year 1910 said board of commissioners of the city of Bismarck in like manner valued and assessed said property for the purpose of taxation at the sum of $36,000, and the taxes for all purposes for said year 1910 were computed, imposed, and charged upon and against said property based on said valuation and assessment of $36,000, resulting in an aggregate tax of $1,926. That

notwithstanding the legal requirements that all property shall be assessed for taxation at its actual cash value, the uniform practice throughout all parts of the state of North Dakota always has been, and was in the year 1909 and 1910, to value taxable property at much less than its actual cash value; and said practice has been universally and uniformly followed and acquiesced in by all assessors, boards of equalization, and taxing officers throughout the entire state of North Dakota.

"That in the years 1909 and 1910 the city board of equalization of said city of Bismarck, as well as all other boards of equalization in Burleigh county, and in all other parts of the state, in fixing the assessed value of property for taxation adopted and used as the assessable value a value which was intended to represent approximately 25 per cent of the actual value of the property assessed; and the assessed value was computed by taking one fourth of the conservatively estimated actual value, as the assessed value.

"That in assessing and equalizing assessments of taxable property throughout the city of Bismarck in the years 1909 and 1910, said city board of equalization acted upon and applied the aforesaid practice of fixing the assessed value of property at approximately 25 per cent of its actual value as to all taxpayers, save and except as to this plaintiff. That with respect to this plaintiff's said establishment, said city board of equalization intentionally and arbitrarily departed from said general rule, and wilfully and unjustly assessed this plaintiff's property at a value representing approximately 50 per cent of its actual value, as said board then and there well knew; and this was done with the intent and for the purpose of fraudulently causing to be imposed upon this plaintiff a rate of taxation in excess of the rate of taxation imposed on other taxpayers in said city.

"That the just and true assessable value of said property in the years 1909 and 1910 was not to exceed the sum of $85,000, and the just and true amount of taxes that this plaintiff ought to pay for said respective years on said property is for 1909 not to exceed the sum of $1,200, and for 1910 not to exceed the sum of $900.

"That plaintiff did, on the 11th day of August, 1911, pay to the county treasurer of Burleigh county, in part payment of the 1910 taxes, the sum of $692.18, and is now ready and willing to pay, and hereby offers to pay, sums stated in ¶ VI. in this complaint (less the partial

payment last mentioned), or such other or different sum as this court may find to be justly due or owing for or on account of the taxes on said property for said respective years.

"That plaintiff has offered to pay to the county treasurer of Burleigh county the just amount of taxes due, but said county treasurer has refused and still refuses to accept any other or different sum than the full amount of said taxes as they appear charged on the tax lists, with interest and penalties.

"That the defendant Barnes, who is the sheriff of Burleigh county, has by virtue of his office as sheriff, and pursuant to the statute in such cases made and provided, made distraint upon and seized all this plaintiff's said property for the purpose of selling the same for the satisfaction of said pretended taxes, and asserts and claims that the aggregate sum due for such taxes, exclusive of his fees and costs, is the sum of $4,370.-37, and will, unless restrained from so doing, sell and dispose of said property therefor, and wholly deprive this plaintiff thereof; and this plaintiff will be remediless in the premises.

"That inasmuch as part of said taxes is valid, and hence said sheriff may lawfully distrain and sell plaintiff's property therefor, this plaintiff cannot pay said taxes under protest and recover the same back from said sheriff; and inasmuch as in an action at law it cannot be determined how much of said taxes is justly due, plaintiff is wholly without remedy in an action at law, and is without remedy save in a court of equity."

Plaintiff's prayer for judgment is that the defendant sheriff be enjoined from further proceeding with said distraint of plaintiff's property, and be required to release the same until the final determination of this action; that the court ascertain and determine the just amount of taxes due, and that plaintiff be permitted to pay the same, and that thereupon the remainder of taxes in excess of the amount justly due be declared null and void and canceled of record; and that the defendants be forever enjoined from attempting to enforce the same. The defendants answered, alleging that the cash value of said plaintiff's property was not less than $175,000, and set forth in detail the facts showing that the property had been properly assessed on an equitable and just basis; and also alleged that the plaintiff's complaint did not set forth facts entitling the plaintiff to equitable relief. At the commencement of the action the district court issued a temporary injunctional order where-

by the defendant Barnes was restrained "from selling or attempting to sell the property of the plaintiff which he had distrained and seized under and by virtue of the claim for the alleged delinquent taxes due thereon for the years 1909 and 1910." This injunctional order remained in force during the pendency of the action. The cause was tried on its merits and final judgment rendered in favor of the defendant for a dismissal of the action. Plaintiff has appealed from the judgment and demanded a trial *de novo* in this court.

It will be noticed that the only objection made to the tax in the original complaint is that the city board of equalization fraudulently and arbitrarily placed an excessive and grossly disproportionate valuation on plaintiff's property. But after the cause had been noticed for trial, and prior to the trial, an amended complaint was served alleging as additional grounds that the taxes imposed on said property for state purposes for the year 1909 (consisting of certain items set forth in the complaint) aggregated in all 5 mills per dollar of the assessed value, or 1 mill in excess of the constitutional limit; and that the taxes imposed on said property for state purposes for the year 1910 were computed at the rate of $4\frac{2}{10}$ mills per dollar of the assessed value, or an excess of $\frac{2}{10}$ mill over the constitutional limit. At the time of the trial the plaintiff expressly waived the ground on which the action was originally commenced, to wit, that the valuation of plaintiff's property was fixed at an excessive rate; and for the purposes of this action it is conceded that such property was not overvalued, but that the same was assessed and equalized at approximately the same proportionate rate as the property of other taxpayers. The sole ground, therefore, on which plaintiff asks for equitable relief, is based upon the alleged excessive state levies for the years 1909 and 1910.

Plaintiff's contention regarding these taxes is stated in its brief as follows: "That the taxes charged against plaintiff were illegal and excessive in 1909 to the extent of $45.56, and in 1910 to the extent of $7.20; that the amount of taxes justly due was, for 1909, $2,191.53; for 1910, $1,918.80." In other words, plaintiff admits that the correct amount of taxes which it was justly beholden to pay was $4,110.33. The only allegations of fraud in the complaint relate to the action of the board of equalization of the city of Bismarck. As already stated, this part of the complaint was eliminated by the plaintiff at the trial in the

30 N. D.—36.

court below. It is conceded that the taxes levied for county, city, and school purposes are regular and valid. The partial payment of taxes alleged in the complaint consisted solely of certain water rents due to the plaintiff from the county of Burleigh, and applied by the county treasurer upon such taxes without the request of the plaintiff. Whether the county treasurer had authority to make such application, or whether the plaintiff can plead the same as a set-off against the tax, is not involved in this action, nor is there any evidence that the defendants sought to collect from the plaintiff any part of the tax alleged to have been so paid.

The sole question therefore presented to this court is whether or not an illegal excess of $52.76 in the state levies for the years 1909 and 1910, out of the total tax of $4,163.09, will entitle the plaintiff to have the collection of the tax enjoined. This question was considered by the Supreme Court of the United States in the case of Dows v. Chicago, 11 Wall. 108, 20 L. ed. 65, and in an opinion by Justice Field it was said: "Assuming the tax to be illegal and void, we do not think any ground is presented by the bill justifying the interposition of a court of equity to enjoin its collection. The illegality of the tax and the threatened sale of the shares for its payment constitute of themselves alone no ground for such interposition. There must be some special circumstances attending a threatened injury of this kind, distinguishing it from a common trespass, and bringing the case under some recognized head of equity jurisdiction, before the preventive remedy of injunction can be invoked. It is upon taxation that the several states chiefly rely to obtain the means to carry on their respective governments, and it is of the utmost importance to all of them that the modes adopted to enforce the taxes levied should be interfered with as little as possible. Any delay in the proceedings of the officers upon whom the duty is devolved of collecting the taxes may derange the operations of government, and thereby cause serious detriment to the public.

"No court of equity will, therefore, allow its injunction to issue to restrain their action, except where it may be necessary to protect the rights of the citizens whose property is taxed, and he has no adequate remedy by the ordinary processes of the law. It must appear that the enforcement of the tax would lead to a multiplicity of suits, or produce irreparable injury, or, where the property is real estate, throw a cloud

upon the title of the complainant, before the aid of a court of equity can be invoked. In the cases where equity has interfered in the absence of these circumstances, it will be found upon examination that the question of jurisdiction was not raised, or was waived." The same rule was also announced by the supreme court of the territory of Dakota, in its decision in the case of Frost v. Flick, 1 Dak. 131, 46 N. W. 508, wherein it said: "It has been well said that courts of equity do not sit to reverse or correct errors and mistakes of law, and cannot attempt to prevent, any more than it will redress, all wrongs.

"It is no answer to say, let those whose duty it is to administer the revenue law do it with greater care, and do everything which the law requires just as it requires, and at the time specified, and be careful that they do no more than is required. We must take things as they are, and look at practical results. Chicago, B. & Q. R. Co. v. Frary, 22 Ill. 34.

"The doctrine seems well settled that equity will not interfere by injunction to restrain the enforcement of tax proceedings on the ground of irregularities or errors in the assessment of the tax (or in the execution of the power conferred upon taxing officers, the remedy at law being deemed sufficient in such cases. High, Inj. 355; Macklot v. Davenport, 17 Iowa, 379; Warden v. Fond du Lac County, 14 Wis. 618.

"The cases in which courts of equity have exercised jurisdiction in matters of this character will be found to be confined almost exclusively to those wherein the tax itself is illegal or unauthorized,— not a legal tax assessed in an irregular manner (McClure v. Owens, 21 Iowa, 133); or where the property assessed is not subject to the tax (Illinois C. R. Co. v. McLean County, 17 Ill. 291); or where fraud has been practised by the taxing officers (Cleghorn v. Postlewaite, 43 Ill. 428). . . .

"It is laid down as a broad principle that in no case will the collection of a tax be enjoined where it is not shown that the injury resulting from its enforcement would be irreparable, and this fact must appear in the bill by issuable averments. High, Inj. 362; Ritter v. Patch, 12 Cal. 298. If the tax is in itself a legal one, and the property on which it is levied subject to taxation, then it cannot be said that any such injury could result from its collection. It might financially embarrass the taxpayer, it might cast a cloud on his title, it

might absolutely bankrupt him, but would these be any reasons for the interference of a court of equity? Assuredly not, or the powers and process of such court would find ample employment. . . .

"It is a matter of indifference to the public interests, who pays the tax, or out of what kind of property it is made. But it is of the highest importance that it be paid, and that speedily, and with as little cost and expense to the public treasury as possible. A party occupies no very equitable ground, to say the least, who admits that land which he owns is chargeable with a tax, that such tax is just and legal, but that he will make the error or neglect of an officer his excuse for delaying or defeating its payment.

"The last article of personal property subject to taxation belonging to the poor man may be seized and sold for the satisfaction of the tax, and courts of equity in most cases could afford no relief, while the rich man, with his broad acres and money to fee attorneys, if permitted to take advantage of such quibbles and technicalities, might indefinitely postpone the discharge of his obligation, thereby throwing additional burdens on willing taxpayers, and embarrassing the public treasury."

The doctrine announced by the Supreme Court of the United States and the territorial supreme court was fully approved by this court in the case of Farrington v. New England Invest. Co. 1 N. D. 118, 45 N. W. 191. In that case this court said: "The general rule pertaining to the interference of equity with tax proceedings is stated by High, Inj. §§ 485, 486, as follows: 'It may be laid down as a general rule that equity will not interfere by injunction with the collection of a tax which is alleged to be illegal or void merely because of its illegality, hardship, or irregularity, but there must be some special circumstances attending the threatened injury to distinguish it from a mere trespass, and thus to bring the case within some recognized head of equity jurisprudence; otherwise the person aggrieved will be left to his remedy at law.' . . .

"Courts of equity should, in general, extend the strong arm of their preventive power to restrain the collection of a tax or annul tax proceedings only where the property sought to be taxed is exempt from taxation, or the tax itself is not warranted by law, or the persons assuming to assess and levy the same are without authority so to do, or where

the proper taxing officials have acted fraudulently; and, in addition, plaintiff must bring himself within some recognized rule of equity jurisprudence."

The rule laid down in the case of Farrington v. New England Invest. Co. was quoted with approval by this court in a number of subsequent decisions, and among others in the case of Douglas v. Fargo, 13 N. D. 467, 101 N. W. 919, where the following general principle was announced: "Courts of equity should, in general, interfere to restrain the collection of a tax or annul tax proceedings *only* where it appears either that the property sought to be taxed is not subject to taxation, or the tax itself is not wholly authorized by law, or the taxes are assessed or levied by unauthorized persons, or the taxing officers have acted fraudulently, or the taxes have been unjustly levied, or the assessment made unjustly or without uniformity; *and the plaintiff must, in addition, bring himself within some recognized head of equity jurisprudence,* and must also tender or pay the taxes justly chargeable upon his property, before an injunction should issue to restrain the collection of the taxes, unless statutory provisions made such tender unnecessary." The two cases last cited involved real estate taxes, and hence the principles therein announced have even greater force when applied to personal taxes. Schaffner v. Young, 10 N. D. 245, 253, 86 N. W. 733.

It is conceded even by plaintiff's counsel that as a general rule "equity will not enjoin the distraint of personal property for a tax." But it is contended that this case furnishes an exception to the rule, for the reason that the property involved, although personal, "for all practical purposes, is in every essential particular like real estate," and also, "that the property, although personal, is of such character that the seizure and sale thereof will cause irreparable injury not ascertainable in money."

The rule is stated in Cooley on Taxation, 3d ed. p. 1415, as follows: "When a tax as assessed is only a personal charge against the party taxed, or against his personal property, it is difficult in most cases to suggest any ground of equitable jurisdiction. Presumptively the remedy at law is adequate. If the tax is illegal and the party makes payment, he is entitled to recover back the amount. The case does not differ in this regard from any other case in which a party is compelled to pay an illegal demand; the illegality alone affords no ground for

equitable interference, and the proceedings to enforce the tax by distress and sale can give none, as these only constitute an ordinary trespass. To this point the decisions are numerous. The exceptions to this rule, if any, must be of cases which are to be classed under the head of irreparable injury; as when the enforcement of a tax might destroy a valuable franchise, or might embarrass an assignee or receiver in the execution of his trust; or when property is levied upon which possesses a peculiar value to the owner beyond any possible market value it can have; and other like cases, where the recovery of damages would be inadequate redress. *A case would be exceptional, also, if under the law no remedy could be had to recover back moneys paid.*"

In High on Injunctions, 4th ed. § 505, it is said: "As regards the question of equitable relief against a tax which is levied upon or sought to be collected out of personal property, the better considered doctrine, and that supported by the clear weight of authority, is that equity will not interfere by injunction to restrain a levy upon or sale of personal property in satisfaction of a tax which is alleged to be illegal. Even in those states which have inclined to depart from the general doctrine denying relief in equity against an illegal tax, the courts, while contending for the jurisdiction in cases affecting the title to real estate, nevertheless refuse to interfere where only personal property is involved, and leave the parties aggrieved to their remedy at law." See also Pom. Eq. Jur. § 359.

In the case of Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 107, 90 N. W. 260, being an action to set aside and perpetually enjoin the collection of certain taxes levied against the property of the Soo Railway Company, this court said: "The defendant contends that the plaintiff has not brought itself within any of the recognized principles of equity jurisprudence justifying it in passing by remedies at law and resorting to injunctional proceedings. A statement of the allegations of the complaint will show the basis of plaintiff's contention. The complaint alleges: . . .

" 'That this plaintiff is engaged in the business of operating a railway through said county, and connecting the places and people therein with eastern and western points, and is a common carrier of freight, express, and passengers into and out of said county, and all the property of plaintiff in said county is used in and about said business, and is

necessary for the proper conduct thereof; that if said property, or any thereof, is seized by said officers, such seizure and distraint would seriously hamper and cripple the said business, and would inflict great and irreparable injury, and would occasion a great multiplicity of suits, and occasion great and irreparable damage and annoyance to this plaintiff and the people of said county; that plaintiff has no adequate remedy in law in said matter, and has no remedies at law for the injuries which would follow such seizure and distraint of its property as aforesaid.' These allegations are statements of conclusions, and not of facts. It is not apparent therefrom, nor from the evidence, that irreparable injury or damage would follow the denial of the prayer for a permanent injunction. It is not shown how a multiplicity of suits would follow such refusal of equitable relief. . . . In an early case in this state the following rule was laid down by the supreme court, and has not been departed from: 'Courts of equity should, in general, extend the strong arm of their preventive power to restrain the collection of a tax or annul tax proceedings *only* where the property sought to be taxed is exempt from taxation, or the tax itself is not warranted by law, or the persons assuming to assess and levy the same are without authority to do so, or where the proper taxing officials have acted fraudulently; *and, in addition, plaintiff must bring himself within some recognized rule of equity jurisprudence.'* Farrington v. New England Invest. Co. 1 N. D. 118, 45 N. W. 191. The case cited related to taxes upon real estate, but the principles there announced apply with more force to collection of personal property taxes than to enforcement of real estate taxes. . . .

"The tax being a personal property tax, the complaint shows no facts which bring the action within any of the exceptions to the general rule that an injunction will not lie to prevent the collection of a personal property tax. The property taxed is not exempt. A constitutional law authorized its taxation, and gave the officers authority to tax it. No facts are pleaded or shown that can reasonably be said to show that there exists no remedy at law, or that irreparable damage will follow if the injunction be not granted. That an injunction will not be granted to restrain the collection of a personal property tax, except in certain cases, has recently been held by this court, and the great weight of authority favors such holding. Schaffner v. Young, 10 N. D. 245,

86 N. W. 733. The facts of the case at bar do not bring it within any of the exceptions to that rule. Neither the complaint nor the evidence shows any facts warranting a court of equity interfering with the collection of taxes on personal property. The plaintiff had an adequate remedy at law, and should have resorted to it, and could thereby have prevented a multiplicity of suits and any seizure of its property. St. Anthony & D. Elevator Co. v. Bottineau County (St. Anthony & D. Elevator R. Co. v. Soucie), 9 N. D. 346, 50 L.R.A. 262, 83 N. W. 212." See also Union P. R. Co. v. Weld County, 133 C. C. A. 392, 217 Fed. 540.

In the case of Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, the tax involved was a county tax. In the instant case an attack is made upon a state tax, and hence a court of equity is even more reluctant to interfere than if it involved a tax levied by a municipality. Decker v. McGowan, 59 Ga. 805, and authorities cited. See also High, Inj. 4th ed. § 536. Practically every case cited by appellant involved taxes levied by municipalities upon property wholly exempt from such taxation; the entire tax involved was void at its inception, and an enforcement thereof threatened the franchise,—the very existence of the corporation itself,—with destruction. It seems obvious that these cases cannot be considered authority under the facts in this case.

Appellant's counsel cite the case of First Nat. Bank v. Lewis, 18 N. D. 390, 121 N. W. 836, as an example of a case in this court where the illegal part of a personal property tax was enjoined. An examination of the record in that case shows that an injunction was not asked therein. That was an equitable action to cancel a certain resolution or order of the board of county commissioners of Cass county. No question was presented as to the propriety of the remedy; but the real question in issue therein, viz., the authority of the county board of equalization to raise the individual assessment of personal property after the same had been equalized by the city board of review,—was submitted and decided on its merits. The mere fact that this court in that case assumed jurisdiction, and decided the question thus presented, does not make that decision authority in support of other legal propositions incidentally involved, but withdrawn from the court's consideration by the parties thereto. Dows v. Chicago, 11 Wall. 108,

20 L. ed. 65. That decision, therefore, is authority only upon the questions therein decided, and does not overrule the decision of this court in Re First Nat. Bank, 25 N. D. 635, L.R.A.1915C, 386, 146 N. W. 1064, holding that the proper method of reviewing a decision of the board of county commissioners made while equalizing and correcting assessments, then pending before them and judicial in its character, is by appeal from such decision to the district court; neither is such decision authority in support of the contention that mere illegality of a tax is sufficient ground to warrant equitable interference. Neither of those questions were argued, considered, or decided in that case.

We are unable to see where the plaintiff herein is in a different position from that of any other taxpayer in the state. If a certain portion of the state levy was excessive and illegal, then the same proportion of the taxes of every taxpayer in the state was excessive and illegal. If plaintiff is entitled to injunctive relief, so is every taxpayer in this state. If the complaint in the case of Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 107, 90 N. W. 260, fails to set forth allegations justifying equitable interference, it is difficult to see how it can be seriously contended that the facts in the case at bar present such cause. Surely the interference with the business of this plaintiff could cause no greater injury or hardship than the alleged threatened interference with the business of the railway company. In this case it is not averred or shown that the intervention of a court of equity is necessary to prevent a multiplicity of suits. On the contrary the probability, or even possibility, of a multiplicity of suits, is negatived by the facts in the case. Nor are any facts averred showing that the remedies provided by law are not entirely adequate; and there is certainly nothing to show that the enforcement of the tax will result in any irreparable injury to the plaintiff. The only possible injury suggested is that plaintiff might be compelled to pay a tax amounting to $4,163.09, of which sum two items aggregating $51.76 are illegal and invalid; and which if paid by the plaintiff under compulsion and under protest could be recovered back by it. Can it be seriously contended that this presents a cause justifying equitable interference? We are satisfied it does not. In considering a similar question, the supreme court of Michigan in the case of Youngblood v. Sexton, 32 Mich. 406, 20 Am. Rep. 654, speaking through Judge Cooley, said: "The grounds

suggested, but not argued, as giving equitable jurisdiction in the case, are, *first,* that thereby a multiplicity of suits may be avoided; *second,* that otherwise the proceedings may ripen into a cloud upon the title to complainants' land; and, *third,* that irreparable injury is threatened to complainants in their business. As the tax is only personal, and as yet affects no real estate, and may never do so, the second ground calls for no consideration. The force of the third must rest in the fact that enforcing the tax may in some cases compel the suspension of business, because it is more than the person taxed can afford to pay. But if this consideration is sufficient to justify the transfer of a controversy from a court of law to a court of equity, then every controversy where money is demanded may be made the subject of equitable cognizance. To enforce against a dealer a promissory note may in some cases as effectually break up his business as to collect from him a tax of equal amount. This is not what is known to the law as irreparable injury. The courts have never recognized the consequences of the mere enforcement of a money demand as falling within that category."

The mere fact that the tax of the plaintiff may be larger than that of a majority of the taxpayers in the state does not give it any standing in a court of equity. As was said by the Supreme Court of the United States in "State Railroad Tax Cases," 92 U. S. 575, 614, 23 L. ed. 663, 674: "It is a profitable thing for corporations or individuals whose taxes are very large to obtain a preliminary injunction as to all their taxes, contest the case through several years' litigation, and when in the end it is found that but a small part of the tax should be permanently enjoined, submit to pay the balance. This is not equity. It is in direct violation of the first principles of equity jurisdiction."

At the time this action was commenced the defendant Barnes, as sheriff of Burleigh county, had already seized certain property belonging to the plaintiff. The plaintiff therefore had an adequate remedy at law by making payment of such taxes under protest, and bringing suit to recover the illegal excess. St. Anthony & D. Elevator Co. v. Bottineau County (St. Anthony & D. Elevator R. Co. v. Soucie), 9 N. D. 346, 50 L.R.A. 262, 83 N. W. 212; Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 107, 90 N. W. 260; Chicago & N. W. R. Co. v. Rolfson, 23 S. D. 405, 122 N. W. 343; Schaffner v. Young, 10 N. D. 245, 86 N. W. 733. See also authorities cited in

note, 45 Am. Dec. 164; 37 Cyc. 1174; Cooley, Taxn. 3d ed. pp. 1415, 1487. Plaintiff, also, in the first place, had the remedy of obtaining a review and by appropriate legal proceedings correcting the error committed by the state board of equalization. Sioux Falls Sav. Bank v. Minnehaha County, 29 S. D. 146, 135 N. W. 689, Ann. Cas. 1914D, 910; George C. Bagley Elevator Co. v. Butler, 24 S. D. 429, 123 N. W. 866; Spelling, Exr. Relief, § 1967; Cooley, Taxn. 3d ed. p. 1407; 37 Cyc. 1120; see also State ex rel. Lenhart v. Hanna, 28 N. D. 583, 149 N. W. 573. If plaintiff had applied to the courts in proper time for a review and correction of the error made by the state board of equalization, then the result would have been to obtain equality for all the taxpayers in the state. If plaintiff's prayer in this case is granted, it will be placed, not on an equal basis with other taxpayers in the state, but on a more favorable basis. Plaintiff could doubtless, also, have paid the amount of the legal tax and made application to the county commissioners, under the provisions of § 2165, Compiled Laws, for abatement of the illegal excess. But it did nothing except to bring this action. It is elementary that a court of equity will not grant injunctive relief unless it is shown that no adequate legal remedy exists. Sioux Falls Sav. Bank v. Minnehaha County, 29 S. D. 146, 168, 135 N. W. 689, Ann. Cas. 1914D, 910; George C. Bagley Elevator Co. v. Butler, 24 S. D. 429, 434, 123 N. W. 866; Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 107, 90 N. W. 260; Schaffner v. Young, 10 N. D. 245, 86 N. W. 733; 22 Cyc. 775. Such showing has not been made in this case. On the contrary the legal remedies seem entirely adequate; and no reason has been shown to exist which would justify this court in restraining the collection of a tax. It follows that the judgment of the District Court is right, and must be affirmed. It is so ordered.