W. S. CONRAD *vs.* CHARLES W. SMITH, SHERIFF.

Opinion filed April 15th, 1897.

**Fraudulent Conveyance—Change of Possession—Presumption of Fraud— Prospective Statute.**

> Where at the time of the sale of personal property, and of the attachment thereof as the property of the vendor, and of the first trial of the action brought by the purchaser against the sheriff for conversion, the statutes declared that the fact that a sale was not accompanied by an immèdiate delivery, and followed by an actual and continued change of possession, should create a conclusive presumption of fraud, and that the sale should for that reason be void, *held*, that under such statute the attaching creditor obtained a vested right which could not be affected by a subsequent act converting the conclusive presumption of fraud into a rebuttable presumption of fraud. Such a statute is not a mere regulation of the law of evidence, but forms part of the substantive law. *Held*, further, that the new statute did not relate to past sales, but was prospective in its operation. A creditor whose claim accrued before the sale, and who did not subsequently to the sale alter his position to his detriment, is nevertheless a creditor, within the meaning of the statute.

Appeal from District Court, Cass County; *McConnell*, J.

Action by W. S. Conrad against Charles W. Smith, sheriff of Cass County. Judgment for plaintiff. Defendant appeals.

Reversed.

*J. W. Tilly*, for appellant.

This case is controlled by § 4657, Comp. Laws. To apply the amendment as contained in Ch. 78, Laws 1893, to this case would be to give the amendment retroactive effect. A statute should not receive such construction as to make it impair existing rights. New obligations, impose no duties in respect to past transactions unless such plainly appears to be the intention of the legislature. South. on St. Cr. § 464; Potter's Dwaris on Stats. 162, n. g.; Matter of *Oliver Lee & Co.* v. *Bank*, 21 N. Y. 9. The attaching creditor by the seizure in attachment of the stallion acquired a lien and vested right therein that could not be divested by subsequent legislation. *Ryan* v. *Maxey*, 35 Pac. Rep. 514; *Daggy* v. *Ball*, 34

N. E. Rep. 246; *Duggey* v. *Mechanics, etc. Co.*, 32 S. W. Rep. 5; Sedgwick on St. Cr. 188; 23 Am. & Eng. Enc. L. 448.

*Ball, Watson & Maclay*, for respondent.

The debt of McKee to the Brunswick, Balke Collender Co., having been incurred long prior to Oct. 1st, such company was not a creditor of McKee's within the meaning of that word as found in § 5053, Rev. Codes. The language of this section is substantially the same as that of § 4733, Rev. Codes. One whose debt was not incurred while a chattel mortgage was withheld from record, and who did not alter his position to his detriment after the mortgage was given and before it was filed, was held not a creditor within the meaning of this section. *Union National Bank* v. *Oium*, 3 N. D. 193, 54 N. W. Rep. 1034. Our constitutional provision involved in this controversy is that "no bill of attainder *ex post facto* law, or law impairing the obligation of contracts shall ever be passed." Section 16, Const. There is no constitutional inhibition against the passage of retroactive laws in this state provided such laws do not destroy contract obligations. *Bay City* v. *Austin*, 21 Mich. 390; *Welch* v. *Wadsworth*, 30 Conn. 149; *Bennett* v. *Fisher*, 26 Ia. 497; *State* v. *Squires*, 26 Ia. 340. Cooley's Const. Lim. § 370. The act of 1893 in its retroactive aspect, destroys no vested right but is in its essence and operation a remedial statute relating alone to a rule of evidence. The right to have ones controversies determined by existing rules of evidence is not a vested right. Cooley's Const. Lim. § 367; *Webb* v. *Den*, 17 How. 576; *Howard* v. *Moot*, 64 N. Y. 262; *Peo* v. *Mitchell*, 45 Barb. 208; *Failes* v. *Wadsworth*, 23 Maine—; *Millard* v. *Hawley*, 24 N. H. 351; *Rich* v. *Flanders*, 39 N. H. 304; *Daniels* v. *Nelson*, 98 Am. Dec. 577. A defense upon a mere formality may be taken away. *Tift* v. *City*, 82 N. Y. 204; *Irwin* v. *Pierro*, 47 N. W. Rep. 154; *Larkin* v. *Saffaraus*, 15 Fed. Rep. 150; *Finlayson* v. *Peterson*, 67 N. W. Rep. 953, 5 N. D. 587; Cooley's Const. Lim. 370. Note to *Gasher* v. *Stowington*, 10 Am. Dec. 136. A person cannot have vested rights contrary to equity and justice.

*U. S. Mortgage Co.* v. *Gross*, 94 Ill. 483; *Baugher* v. *Nelson*, 9 Gill. 299. Contracts bad or defective in form or made void by penal enactment may be validated and confirmed by subsequent legislation. *Dentzel* v. *Waldie*, 30 Cal. 139; *Ewell* v. *Daggs*, 108, U. S. 143; *Waterson* v. *Mercer*, 9 Pet. 110; Myer's Vested Rights, 42; *Satterlee* v. *Mathewson*, 2 Pet. 380; Suth. St. Cr. 617.

CORLISS, C. J.   This cause is before us a second time upon substantially the same facts. 2 N. D. 408, 51 N. W. Rep. 720. On the former appeal we held that the case fell within the provisions of § 4657, Comp. Laws, and that, therefore, a conclusive presumption of fraud arose in favor of the attaching creditor who was a creditor of the vendor of the property attempted to be sold. The action was against the sheriff for the conversion of a stallion. The sheriff justified under a warrant of attachment issued against one J. H. McKee, once the owner of the stallion, and upon the trial he took the position that the alleged sale of the animal to plaintiff by McKee was by the law conclusively presumed to be fraudulent, and therefore void as to creditors of McKee, for the reason that the sale was not accompanied by an immediate delivery, and followed by an actual and continued change of possession of property. On appeal we held that the evidence fully warranted the contention of the defendant, and the case was therefore reversed, and a new trial ordered. Before the cause came on for a second trial, the legislature repealed the statute in question, and enacted a substitute for it, from which was eliminated the element of conclusive presumption of fraud. The new statute is § 5053, Rev. Codes, and is couched in the following language: "Every sale made by a vendor of personal property in his possession or under his control, and every assignment of personal property, unless the same is accompanied by an immediate delivery and followed by an actual and continued change of possession of the property sold or assigned, shall be presumed to be fraudulent and void as against the creditors of the vendor or assignor, or subsequent purchasers or incumbrancers in good faith and for value, unless those claiming under such sale or

assignment make it appear that the same was made in good faith and without any intent to hinder, delay or defraud such creditors, purchasers or incumbrancers." On the second trial the plaintiff was permitted to introduce evidence that the sale from McKee to himself was made in good faith, and without any intent to hinder, delay, or defraud creditors, purchasers, or incumbrancers. The theory on which the trial court proceeded in allowing this evidence to be introduced was that both of the statutes referred to were statutes regulating evidence, and that, therefore, the one establishing a new rule of evidence before the second trial must govern that trial of the case, although on the first trial a different rule of evidence prevailed because of the statutory conclusive presumption of fraud declared by the law as it stood at that time. Counsel for defendant challenges by this appeal the correctness of this position, and here insists that at the time of the repeal of the old statute and the enactment of the new the creditor whom the defendant represents had become vested with such rights under the provision of the original statute as are protected by the fundamental law against destruction or impairment. It is evident that the pivotal point is the legal character of these two statutes. If they merily establish rules of evidence, then a familiar principle of law requires us to give effect to the one in force when the second trial was had, unless it is apparent that it was designed that the new rule of evidence should not apply to existing causes of action or existing suits. No one has such a vested right in a mere rule of evidence as is protected by the organic law. Judge Cooley ably states and illustrates the doctrine in his work on Constitutional Limitations. He says, at page 452: "It must also be evident that a right to have one's controversies determined by existing rules of evidence is not a vested right. These rules pertain to the remedies which the state provides for its citizens; and generally, in legal contemplation, they neither enter into and constitute a part of any contract, nor can be regarded as being of the essence of any right which a party may seek to enforce. Like other rules affecting a remedy,

they must, therefore, at all times, be subject to modification and control by the legislature; and the changes which are enacted may lawfully be made applicable to existing causes of action, even in those states in which retrospective laws are forbidden. For the law as changed would only prescribe rules for presenting the evidence in legal controversies in the future, and it could not, therefore, be called retrospective, even though some of the controversies upon which it may act were in progress before. It has accordingly been held in New Hampshire that a statute which removed the disqualification of interest, and allowed parties in suits to testify, might lawfully apply to existing causes of action. So may a statute which modifies the common-law rule excluding parol evidence to vary the terms of a written contract, and a statute making a protest of a promisory note evidence of the facts therein stated. These and the like cases will sufficiently illustrate the general rule that the whole subject is under the control of the legislature, which prescribes such rules for the trial and determination as well of existing as of future rights and controversies as in its judgment will most completely subserve the ends of justice." Indeed, it has been held that under constitutions which in terms inhibited the enactment of retrospective laws, changes in rules of evidence might be made applicable to existing cases. *Webb* v. *Den,* 17 How. 576; *Rich* v. *Flanders,* 39 N. H. 304; *De Cordova* v. *City of Galveston,* 4 Tex. 470; *Brandon* v. *Green,* 7 Humph, 130. See, also, *Shields* v. *Land Co.,* (Tenn.) 28 S. W. Rep. 668. In truth, a law relating to evidence cannot be said to have a retrospective effect, when it is applied to subsequent trials notwithstanding the fact that the action was pending when the law became operative. The whole force of such a law is directed to the future,—to the trial of the cause. Its incidental and consequential operation upon the rights of the parties the general law takes no notice of. These remote, contingent, and indirect results are not considered by the courts as affecting constitutional rights. Judge Cooley says: "For the law as changed would only prescribe rules for presenting the

evidence in legal controversies in the future, and it could not be called retrospective, even though some of the controversies upon which it may act were in progress before." Cooley, Const. Lim. p. 452. But we are not called upon in this case to determine whether a change in a rule of evidence is nevertheless inoperative as to existing suits, despite the fact that the fundamental law in terms forbids the enactment of retrospective statutes. Our constitution contains no such article. The crucial question is whether the statute in force when the attachment was made (§ 4657, Comp. Laws.) was a mere regulation of the law of evidence, and therefore subject to change as to existing causes of action, or whether it was not a part of the substantive law under which the creditor by attachment secured a lien which could not thereafter be affected without violating both the state and the national constitutions in their respective articles which protect property rights. See *Ryan* v. *Maxey*, (Mont.) 35 Pac. 514. Section 4657, Comp. Laws, reads as follows: "Every transfer of personal property other than a thing in action, or a ship or cargo at sea, or in a foreign port, and every lien thereon, other than a mortgage thereon, when allowed by law, and a contract of bottomry or respondentia, is conclusively presumed, if made by a person having at the time the possession or control of the property, and not accompanied by an immediate delivery, and followed by an actual and continued change of possession of the things transferred, to be fraudulent, and therefore void, against those who are his creditors while he remains in possession, and the successors in interest of such creditors, and against any person on whom his estate devolves in trust for the benefit of others than himself, and against purchasers or incumbrancers in good faith subsequent to the transfer." It is true that upon a superficial view of the statute it would seem to declare only a rule of evidence. But the mere form of expression is not decisive. It is the substance of the law that is controlling. While a conclusive presumption of fraud is created by the statute, the vital part of the act is that which declares that the sale is void. The sale being void as to

the classes of persons named in the statute, it is beyond the power of the legislature to change the act, and render the sale valid, as against one who has in the meantime secured a lien upon the property. At the time the property in this case was attached the sale was void as to the attaching creditor, and the property was therefore, as to him, the property of the vendor, the defendant in the attachment. It was not in the power of the legislature to divest the lien so created by subsequently declaring the property to be that of the vendee, or by allowing the vendee by proof to establish as to the creditor the validity of a sale declared to be void as to him by the law. Moreover, as the statute was a part of the substantive law, the presumption is that the legislature did not intend to so change it as to effect vested rights. It is only when an act relates to matters of evidence that its language will be construed as embracing existing cases, unless the language compels this construction. So far from showing a legislative purpose to effect past sales, the language of the new statute is clearly prospective. It relates to future sales. Having power to make a new rule as to sales thereafter made, but having no constitutional competence to give that rule retroactive effect so as to destroy vested rights, we must assume that the legislature intended to legislate with respect to future sales only. This· view is entirely consistent with the terms of the statute.

That the statute in force when the levy was made was a part of the substantive law is clear. It declared that sales in violation of its provisions were void, not only as to creditors, but also with respect to purchasers. Had the attaching creditor in this case, instead of levying on the stallion, purchased the animal in good faith and for value at the time the levy was made, there could be no question concerning his title. Whether or not he obtained title in the supposed case would not depend upon the future pleasure of the legislature, but would be settled by the law then in force. The law which declared the sale void as to him would vest in him a title to the property purchased from the common vendor, and no subsequent legislation could wrest that title from

him. But the sale in violation of the statute was declared to be just as void as to creditors as with respect to purchasers. Both classes are placed in the same category. It follows that, if the act is substantive law so far as purchasers are concerned, it must likewise be substantive law with respect to the rights of creditors. All rights acquired under its provisions, whether by purchase or by levy of process, were equally entitled to protection against impairment by subsequent legislation. If the legislature could at any time take away the right of the creditor to treat the sale as void, it follows that years after the sale of the property on execution the creditor, the sheriff, and the purchaser would, by a change in the law, become liable for the conversion thereof in a suit by the vendee, although at the time of the levy and of the sale under execution the statute declaring the sale to the vendee void as to creditors was in force. The rights of the attaching creditor having been fixed by the act in force when the levy was made, the court should not have received the evidence bearing on the question of good faith, but, as the same facts were disclosed as on the first trial, should have directed a verdict for the defendant, the law of the case having been settled by this court on the former appeal.

It is urged, however, that the attaching creditor was not a creditor within the meaning of the statute, for the reason that it appeared that his claim was in existence when the sale was made, and that he thereafter did nothing to his detriment, relying upon the apparent continuation of the ownership of the property by his debtor, the vendor; and in this connection our decision in *Bank* v. *Oium*, 3 N. D. 193, 54 N. W. Rep. 1034, is cited. But the statute in force when this sale was made is radically different from the act now in force and also from the statute construed in *Bank* v. *Oium*. Its language is that the sale shall be void, not against creditors simply, but "against those who are his creditors while he remains in possession." Not only those who become creditors after the sale and those who, being creditors, thereafter change their situation, but all who are creditors during the time

the vendor remains in possession, without regard to other circumstances, are within the statute. That an antecedent creditor was in all cases intended to be included within the statute is obvious from the fact that an assignee or trustee for the benefit of creditors was declared to be within the provision of the act. Certainly, if every creditor, without reference to the time when his debt was created, or with regard to the question whether he has altered his position to his detriment while the vendor retained possession, could, through an assignee, overthrow a sale in violation of the statute, the inference is irresistible that such a creditor was intended to be within the protection of the law when he should individually assail the transfer. And the language of the law supports this inference.

The judgment of the District Court is reversed, and a new trial is ordered. All concur.