HUGHES ELECTRIC COMPANY, a Corporation, Appellant, v. ALBIN HEDSTROM, as Sheriff of Burleigh County, North Dakota, The City of Bismarck, a Municipal Corporation, and Burleigh County, North Dakota, Respondents.

(197 N. W. 133.)

**Taxation — evidence held insufficient to sustain injunction against collection of personal property taxes.**

1. In an action to enjoin the collection of personal property taxes assessed against the property of the plaintiff, where the evidence failed to show the comparative undervaluing of other property generally, and where the proof of undervaluation was limited to certain business structures in the same city as plaintiff's property and to certain utilities in that city and elsewhere, it is held, for reasons stated in the opinion, that the plaintiff has failed to prove such a degree of discrimination against it as to be entitled to an injunction against the collection of the taxes.

**Taxation — collection of personal property taxes not restrained, unless legal remedy inadequate.**

2. An injunction will not issue in any case to restrain the collection of personal property taxes, unless the plaintiff's legal remedy is inadequate.

**Taxation — collection of personal taxes for inequality not restrained, where no evidence of comparative valuation.**

3. An injunction to restrain the collection of personal taxes will not issue on

Note.—(1) Injunction to prevent collection of tax on excessive assessment, see notes in 16 L.R.A.(N.S.) 807; L.R.A.1916A, 972; 3 A.L.R. 1371; 28 A.L.R. 985.

(2) Enforcement of illegal tax enjoined in absence of adequate remedy at law, see 14 R. C. L. 339; 3 R. C. L. Supp. 213; 4 R. C. L. Supp. 897; 5 R. C. L. Supp. 760; 26 R. C. L. 464; 4 R. C. L. Supp. 1665.

the sole ground of inequality in the assessment of plaintiff's property as compared to the assessment of other property, where the evidence does not satisfactorily establish comparative undervaluation of such other property generally.

Opinion filed January 19, 1924.

Evidence, 22 C. J. § 70 p. 137 n. 64. Taxation, 37 Cyc. pp. 1265 n. 19 New; 1266 n. 26; 1267 n. 33; 1276 n. 85.

Appeal from the District Court of Burleigh County, *Nuessle, J.* Affirmed.

*Newton, Dullam & Young,* for appellant.

*Geo. F. Shafer,* Attorney General, *C. C. Converse,* and *Gordon V. Cox,* for respondents, and *George E. Wallace* and *William Langer,* for Burleigh County.

BIRDZELL, J.   This is an action brought in the district court of Burleigh county for the purpose of enjoining the collection of certain taxes assessed against the plaintiff in 1919.   From a judgment dismissing the action the plaintiff has appealed and demands a trial de novo in this court.   The theory of the action may best be understood, perhaps, by referring to the allegations in the complaint.   The plaintiff is a public utility corporation operating a utility in the city of Bismarck.   Its property was placed in class 1 by chapter 220 of the Session Laws for 1919 which provided for the valuation of this class at 100 per cent.   It is alleged that for a long period prior to the passage of chapter 220, Session Laws of 1919, it had been the practice of the various officers charged with the assessment of property for taxation to assess at much less than the true and full value and that this practice continued after the adoption of chapter 220; that in the year 1919 property within class 1 of the statute was valued at from 20 to 75 per cent of the true and full value; that the city assessor of the city of Bismarck, in assessing the property of the plaintiff in 1919, appraised it according to the custom and practice at $160,870, which assessment was approved by the city board of equalization; that the county board of equalization increased the assessment 140 per cent, fixing the value of the property at $387,388.   It is upon this valuation that the taxes sought to be restrained are levied.   It is alleged that

the state board of railroad commissioners determined the physical value of the plaintiff's property for rate making purposes as of July 1, 1919 to be $331,959 and that this is in excess of the value of the property. It is alleged that the property of the Bismarck Gas Company was valued for rate making purposes at $98,634 and for taxation at $81,000; and that the property of the Bismarck Water Supply Company was valued at $149,440 by the city assessor, which valuation was confirmed by the county board of equalization but increased by the state board of equalization to $219,870, while it had been valued for rate making purposes at $395,000; that other property within class 1, such as land, flour mills, elevators, warehouses, buildings and improvements upon railway rights of way and on town and city lots, used for business purposes, was assessed at valuations ranging from 20 to 75 per cent, and that some of this class was equalized by the county board of equalization of Burleigh county in 1919 at values as low as 20 per cent; whereas, the equalized value of plaintiff's property is approximately the actual value and greatly in excess of the value determined for rate making purposes. It is alleged that the action resulting in the comparative overvaluation of plaintiff's property is a fraud upon its rights which, if given effect, will result in the taking of its property without due process of law and in denying to it the equal protection of the laws. The tax spread is $13,895.77; whereas, if it had been spread upon the original assessed valuation of $160,870, the tax would not have exceeded $5,789.90. It is alleged that the tax is excessive to the extent of the difference between these two amounts; that the sheriff is threatening to distrain and sell plaintiff's property, pursuant to the statute, for the collection of the entire tax; that to permit the excessive taxes to be collected would result in a multiplicity of suits and inflict irreparable injury upon the plaintiff; that the plaintiff has no adequate remedy at law; that it has tendered to the county treasurer the sum of $5,789.90 as the just and true amount of its taxes for said year, and that it offers to pay this sum in full discharge of its taxes, or to pay such other or different sum as the court may find to be justly due and owing; that prior to the bringing of the action, the assessment was submitted to the board of county commissioners of Burleigh county for adjustment and adjustment refused. The prayer of the complaint is for injunction to prevent

defendants from proceeding with the collection of the taxes; that the court ascertain and determine the amount due; and that the excess be decreed to be illegal and void and be cancelled of record.

The trial court found that the plaintiff's property was assessed in 1919 at a valuation which was larger in proportion to the true value than that of other similar public utility corporations in other cities and counties of the state; that the larger valuation was not the result of fraud or willful intent to discriminate against the plaintiff's property; that it would have been possible for the plaintiff to have paid its taxes under protest and to have instituted an action at law for the recovery of the excess above its lawful and equitable assessment; that it was still possible for the plaintiff so to do; that as the plaintiff had a plain, speedy and adequate remedy at law, the court had no power to grant relief through the equitable remedy of injunction.

Chapter 220 of the Laws of 1919 places the following property in class 1: railroads and other public utilities, land (exclusive of structures and improvements), bank stock, flour mills, elevators, warehouses and storehouses, buildings and improvements on railway rights of way and structures and improvements on town and city lots used for business purposes. There is in the record considerable evidence relating to the assessment of structures and improvements in the city of Bismarck, also to public utilities in a number of cities of the state, including Bismarck, which tends to show that such properties were assessed in the year 1919 at a percentage of value much below that applied to the property of the plaintiff corporation. There is, however, other evidence, practically undisputed, to the effect that railroad property was assessed at 100 per cent of its value, and it is shown that the assessment upon railroad property in the city of Bismarck exceeds in the aggregate the assessment upon the plaintiff's property. Similarly, it is shown that bank stock in the city of Bismarck was assessed at 100 per cent and this likewise aggregates a large assessment. The record does not show affirmatively that other property within this class, such as flour mills, elevators, warehouses, and land exclusive of structures and improvements, was not assessed as the law requires.

To state the condition of the record more in detail: The only evidence tending to support the allegations of the complaint with reference to the continuation, after the passage of the Classification Act,

chapter 22, Session Laws of 1919, of the practice of assessing property at a fraction of its value, is that given by three witnesses: the county auditor, a member of the city commission and the chairman of the city commission. The county auditor testified that for a period of years prior to the passage of the Classification Act it was the practice to assess property at approximately 25 to 40 per cent of the actual value and that in 1919 he had made an honest effort to see that the new law was complied with relative to the assessment of property; that each of the assessors was furnished with a copy of the instructions of the state tax commissioner directing them to comply with the law and that any additional advice he (the county auditor) gave the assessors from time to time was in accordance with the law; and that the tax commissioner had met with the assessors in Burleigh county prior to the assessment of 1919 and had insisted upon having property assessed at its full value.

The witness Bortsch, a member of the city commission, testified that before the assessment was made in 1919, the city commission had sent the assessor to three other cities in the state to ascertain what valuation they were putting on property in those cities; that they desired to change to the new basis as nearly as possible; that after learning what was contemplated in the other cities, he (the assessor) returned to Bismarck and assessed property at from 50 to 60 per cent of its value; that when the assessment was returned to the city commission, sitting as a board of equalization, they did not attempt to increase the valuation to the full value of the property but merely to equalize assessments; that the assessment of the plaintiff at a little over $160,000 represented a fair equalization with other property in the city.

The witness Lucas, chairman of the board of city commissioners, testified that the assessment of $160,870 against the plaintiff company was, in his judgment, a fairly equalized assessment compared to other property in the city; that the board took the assessor's figures for the valuation of 1919; they compared them with the assessment for 1918; the figures for 1918 seemed to be about one third and for 1919 about two thirds more which gave the approximate value; that the assessor was to make the adjustment according to the full value and his figures for 1919 generally ran about three times his figures for 1918.

With respect to class 1 property, the record shows the following:

| | |
|---|---:|
| The aggregate valuation of city lots without improvements in the city of Bismarck .... | $3,001,862 |
| The total assessment upon business structures in the city ........................... | 1,039,229 |
| Bank stock ............................. | 451,638 |
| Railroad property ...................... | 421,537 |
| | $4,914,266 |

| | |
|---|---:|
| Local Utilities: | |
| Hughes Electric Company ............... | 387,388 |
| Bismarck Water Supply Company ......... | 219,677 |
| Bismarck Gas Company ................. | 81,000 |
| | 688,065 |

Total $5,602,331

Other items not appearing in the record bring the total assessed valuation of class 1 property in the city of Bismarck to $5,934,813, while the total assessed valuation of all property in the city was $7,664,222. (In Burleigh county the assessed valuation was $34,332,298, and in the state, approximately $1,323,000,000.) It thus appears that the plaintiff's assessment in the city of Bismarck represents 5 per cent of the total assessed valuation and 6.51 per cent of the assessed valuation of property in class 1. The record is almost, if not wholly, silent as to the assessment of property in classes other than class 1, which makes up 32.67 per cent of the assessed valuation of the city. As to the class 1 property, the evidence for the plaintiff, aside from that previously adverted to and which relates to the alleged general policy of assessing property in this class at a fraction of its value, is confined, so far as the city is concerned, to fourteen buildings used for business purposes and to two other public utilities, the Bismarck Water Supply Company and the Bismarck Gas Company. The aggregate assessed value of the properties to which this evidence relates is $1,067,272.

To state the matter another way, there is evidence relating to the

assessment of particular properties in the city of Bismarck, which
tends to show undervaluation as to items aggregating $1,067,272.00,
but no direct evidence of the undervaluing of property making up the
remainder of the assessment and aggregating $6,596,950. Thus the
property shown to be undervalued is only 16.2 per cent of that con-
cerning which there is no direct evidence of undervaluation. Likewise,
there is no direct evidence relating to the undervaluing of the remain-
ing property in class 1 and upon which there is an aggregate assessed
valuation of $4,867,541. Thus the property shown to be undervalued
is only 21.9 per cent of the remaining property in class 1 concerning
which there is no direct evidence of undervaluation. On the other
hand, there is affirmative evidence to the effect that the property of the
plaintiff, the bank stock and the railroad property was assessed ap-
proximately 100 per cent, and these aggregate $1,260,563, which is
more than the aggregate valuation of property shown to have been
undervalued.

We are of the opinion that, in view of the presumptions that must
obtain with respect to the performance of official duty, the record in
this case will not support a finding that there was a general departure
from legal requirements in making the assessment. In fact, the posi-
tive testimony rather supports the presumption. In this state of the
record it cannot be said that the plaintiff has been injured by having
its property singled out and assessed at a higher rate than other prop-
erty generally, or even at a higher rate than other property within
the same legislative class. The most it shows is that the plain-
tiff's property was assessed at a higher rate of valuation than
certain other public utility properties located in Bismarck and else-
where and higher than certain structures and improvements in the
city. As there is a much greater volume of property within the same
class as plaintiff's property and within the city of Bismarck that is,
so far as the testimony shows, assessed at 100 per cent of its value
than is shown to have been assessed at any lower or illegal rate, there
is no basis for a finding of discrimination such as will support equitable
interference. Taking the view of the law most favorable to the plain-
tiff's case, we are of the opinion that the record does not show discrimi-
nation against it as compared with other property owners generally
sufficient to warrant equitable interference. While, for the purposes of

this opinion, we take the view of the law that is most favorable to the plaintiff's case and assume that it might in certain circumstances be entitled to enjoin the collection of the tax, we are not to be understood as qualifying or departing from the previous holdings of this court as to the limitations surrounding the use of the equitable remedy of injunction to restrain collection of personal taxes. See Farrington v. New England Invest. Co., 1 N. D. 102, 45 N. W. 191; Douglas v. Fargo, 13 N. D. 467, 101 N. W. 919; Schaffner v. Young, 10 N. D. 245, 86 N. W. 733; Minneapolis, St. P. & S. Ste. M. R. Co. v. Dickey County, 11 N. D. 107, 90 N. W. 260; Bismarck Water Supply Co. v. Barnes, 30 N. D. 555, L.R.A.1916A, 965, 153 N. W. 454. In our opinion, under the record in this case, the plaintiff has both failed to show the existence of a ground for equitable interference and the inadequacy of a legal remedy, if it is, in fact, entitled to any relief.

The situation in this case is in many respects parallel with that presented in the case of Washington Water Power Co. v. Shoshone County (C. C. A. 9th) 270 Fed. 377. In that case the plaintiff sought relief against an assessment of its property at approximately 75 per cent of its value and the circuit court, which had given it relief from such an assessment in another county (Washington Water Power Co. v. Kootenai County (C. C. A. 9th) 270 Fed. 369), denied similar relief in Shoshone County, using the following language (270 Fed. 379):

"When it comes to applying the controlling rules of uniformity and equality, the proper authorities often meet with difficulties which call for the exercise of painstaking judgment and discretion. In the present case we have an illustration of such complexities. In Shoshone county much personal property appears to have been assessed on a basis of full value; it is certain that at least mining improvements, mills and machinery, were so valued, while stocks of merchandise were assessed at invoice prices or less, and lands were valued at figures varying from 50 to higher percentages of value. Of the total valuation of $31,828,-640, property valued at $23,677,806 appears to have been assessed on a basis of approximately 75 per cent. valuation. Of the remainder, $8,150,834 in value, it may be there was some undervaluation by the county assessor; but without satisfactory proof the court cannot say what, if any, real error prevailed, and cannot safely undertake the

50 N. D.—34.

task of fixing the real market value of mines in an endeavor to determine relationships of the assessments made.

"We gather that the undervaluation of classes of property which prevailed as referred to in Washington Water Power Co. v. Kootenai County (C. C. A. 9th) 270 Fed. 369, was by no means extensive in Shoshone county, and that as a result appellant has not made a case for relief as against the assessment of its property in the county."

It will be seen that the facts are quite similar to the facts in the case at bar and we think the reasoning of the opinion is applicable here. The plaintiff is not entitled to injunctive relief merely on the ground that, as between it and certain other public utilities, or as between it and certain other property, there was inequality in the assessment. One seeking relief on the ground of discrimination in assessing property for taxation, particularly where his own property has not been assessed substantially higher than the law requires, must show that a greater injustice will result from denying relief than from granting it. In our opinion, the plaintiff has not succeeded in making such a showing in this case. Since, in our view of the case the injunction prayed for was properly denied, and since the parties have submitted no other issue for determination, the judgment appealed from will be affirmed without prejudice to any other remedy the plaintiff may have in the premises.

BRONSON, Ch. J., and CHRISTIANSON, J., and COOLEY and BUTTZ, Dist. JJ., concur.

JOHNSON and NUESSLE, JJ., being disqualified, District Judges CHAS. M. COOLEY and C. W. BUTTZ, sitting in their stead.