EDELMIRO MARTÍNEZ RIVERA, demandante y apelado, *v.* R. SANCHO BONET, TESORERO DE PUERTO RICO y A. SANCHEZ HIDALGO, COLECTOR DE RENTAS INTERNAS DE COROZAL, PUERTO RICO, demandados y apelantes.

Núm. 7533.—*Sometido:* Junio 6, 1938. *Resuelto:* Julio 14, 1938.

554

*Hon. Procurador General B. Fernández García, Emilio de Aldrey,
Procurador General Auxiliar* y *R. García Cintrón, Subprocurador
General Auxiliar,* abogados de los apelantes; *E. Martínez Rivera,*
pro se.

EL JUEZ ASOCIADO SEÑOR DE JESÚS emitió la opinión del
tribunal.

El demandante es dueño de una finca rústica de cuarenta
y siete cuerdas de superficie radicada en el barrio Abras de
Corozal, que adquirió como parte de otra de mayor cabida
por escritura número 10, de 27 de marzo de 1930, ante el
notario don Rafael Buscaglia. Dicha finca aparece en la
lista de contribuyentes a nombre del demandante desde 1932.
Antes de esa fecha figuraba como de la propiedad de Tomás
Anzalota. Pagó el demandante las contribuciones correspon-
dientes a los años económicos 1933–34 y 1934–35, pero el 19
de octubre de 1936 el colector demandado, actuando a nombre
y bajo la autoridad del codemandado Rafael Sancho Bonet,
Tesorero de Puerto Rico, le notificó haber embargado la refe-
rida finca para venderla en pública subasta y aplicar su pro-
ducto al pago de las contribuciones adeudadas sobre la
misma, correspondientes a los años económicos de 1928–29,
1929–30, 1930–31, 1931–32, 1932–33 y 1935–36. Los recibos

correspondientes a los cuatro primeros años económicos, o sea 1928–29, 1929–30, 1930–31 y 1931–32, aparecen extendidos a nombre de Tomás Anzalota, anterior dueño, y los restantes, o sea, desde 1932–33 en adelante, a nombre del demandante Edelmiro Martínez Rivera.

Al ser notificado del embargo el 19 de octubre de 1936, el demandante se personó ante el colector demandado y le ofreció el pago de los recibos correspondientes al año económico 1935–36 y al primer semestre de 1936–37, negándose el colector a recibirlo a menos que pagase también los correspondientes a los años comprendidos entre 1928–29 y 1932–33, ambos inclusives, lo cual rehusó el demandante.

Radicó entonces la demanda de este caso interesando un auto de *injunction* preliminar primero y permanente después, que prohiba a los demandados, por sí o por sus agentes, anunciar y vender en pública subasta la mencionada finca para el cobro de las contribuciones anteriormente mencionadas, solicitando además cualquier otro remedio compatible con las alegaciones y que los demandados fuesen condenados al pago de las costas y honorarios de abogado.

Juntamente con la demanda, consignó en la secretaría de la corte, a disposición de los demandados, la cantidad de $66.65 que representa las contribuciones y recargos correspondientes al año económico de 1935–36 así como al primer semestre de 1936–37.

Fundamentando su causa de acción alegó el demandante que el embargo trabado por el colector era nulo en cuanto al año 1935–36 y al primer semestre de 1936–37, según se desprende de la demanda, por haberse consignado su importe, y en cuanto a los años económicos de 1928–29 a 1931–32, ambos inclusives, alegó que también era nulo el embargo por los siguientes fundamentos:

(*a*) Porque las contribuciones a que se refieren los recibos correspondientes a los cuatro años económicos últimamente mencionados aparecen impuestas, según el demandante, sobre

una propiedad distinta de la embargada, que figura a nombre de Tomás Anzalota.

(b) Porque habiéndose embargado por los demandados el 19 de octubre de 1936 la finca de 47 cuerdas antes mencionada en ejecución del gravamen impuesto por el artículo 315 del Código Político, dicho embargo sólo puede hacerse extensivo al año económico corriente a la fecha en que se trabó el embargo, o sea el de 1936-37, y a los tres años económicos anteriores al mismo, a saber: 1935-36, 1934-35 y 1933-34.

(c) Porque el derecho a cobrar las contribuciones correspondientes a los años económicos 1928-29, 1929-30 y 1930-31 estaba prescrito al trabarse el embargo el 19 de octubre de 1936, por haber transcurrido más de cinco años desde la fecha en que se impuso la contribución correspondiente a dichos años económicos; y

(d) Porque la actuación de los demandados tiende a privar al demandante de su propiedad sin el debido proceso de ley y a negarle la protección igual de las leyes.

Termina el demandante con la alegación de daños irreparables y de carecer de otro remedio rápido y eficaz en el curso ordinario de la ley.

Dictó la corte una orden para mostrar causa por la cual no debería concederse el *injunction* preliminar. Comparecieron los demandados, se opusieron a las pretensiones del demandante y luego de oír la evidencia de una y otra parte, el 11 de enero de 1937 denegó la corte la solicitud de *injunction* preliminar. Se sometió más tarde el *injunction* permanente por la evidencia aducida en la vista del preliminar y el 30 de marzo' siguiente se dictó sentencia decretando el auto de *injunction* permanente de acuerdo con la súplica de la demanda, con excepción del pronunciamiento de costas, que no fueron concedidas.

Contra esta sentencia se interpuso el presente recurso, señalando los apelantes la comisión de cuatro errores. Los dos primeros, por estar íntimamente relacionados, los vamos a discutir conjuntamente.

"*Primero:* La corte inferior erró al resolver que el derecho del estado a cobrar las contribuciones correspondientes a los años 1928–29 1929–30, 1930–31 y 1932–333 había prescrito para la fecha en que se inició el expediente de apremio mediante el embargo practicado el 19 de octubre de 1936.

"*Segundo:* La corte inferior erró al interpretar el artículo 315 del Código Político en el sentido de que 'la contribución que se impusiere por el corriente año económico y por los tres años económicos anteriores' se refiere a la contribución correspondiente al año económico en que se practicó el embargo (1936–37) y la de los tres años inmediatamente anteriores al embargo, 1935–36, 1934–35, 1933–34."

■ Es un principio bien establecido en la jurisprudencia americana que las contribuciones no constituyen un gravamen sobre la propiedad a menos que el estatuto lo diga así expresamente. *New England Loan & Trust Co.* v. *Young* (Iowa) 10 L.R.A. 478; *Miller* v. *Anderson* (S.D.) 11 L.R.A. 317.

En el caso de *Johnson* v. *Revere Bldg.,* 79 A.L.R. 112, resuelto por la Corte Suprema de Massachusetts en el año 1931, se dijo lo siguiente:

"La contribución sobre propiedad inmueble es primordialmente una imposición pecuniaria sobre el dueño de la misma. El gravamen sobre la propiedad inmueble es simplemente una garantía establecida por el estatuto de la cual el colector puede valerse en defecto de pago. Independientemente del estatuto no existe el gravamen . . . El objeto de crear el gravamen es para permitir que el inmueble pueda ser vendido por defecto de pago de contribuciones. (Se citan casos.) . . . Es un principio bien conocido que las leyes sobre imposición y cobro de contribuciones deben ser estrictamente interpretadas y cualquier duda que hubiere deberá ser resuelta en favor del contribuyente. Si el derecho en que se basa el gobierno para la imposición de la contribución o para su cobro no es claro, debe ser denegado; tal derecho debe aparecer claramente de las palabras del estatuto y no puede ser sostenido por interpretación. *City National Bank* v. *Charles Baker* Co. (Mass.) 61 N. E. 223; *Cabot* v. *Commission of Corporations and Taxation* (Mass.) 64 A.L.R. 1277; *Eaton Crane Pike Co.* v. *Commonwealth* (Mass.) 130 N. E. 99; *Thompson* v. *Henderson* (Md.) 58 A.L.R. 1213."

Véanse también 26 R.C.L. 388 y 3 R.C.L. Supp. 1471.

En el caso de *Linn County* v. *Steele* (Iowa) 110 A.L.R. 1493, resuelto por la Corte Suprema de Iowa el 15 de junio de 1937, se dijo lo siguiente:

"Las contribuciones no constituyen un gravamen (*lien*) sobre la propiedad a la cual se imponen, o sobre cualquier otra propiedad del contribuyente, a menos que haya una ley que expresamente constituya tal gravamen, y en tal caso éste no puede ser ampliado por interpretación judicial."

█ Sentada esta premisa y examinados nuestros estatutos encontramos que de acuerdo con la legislación anterior al Código Civil revisado de 1902, artículo 1923 del Código Civil español, la ley solamente creaba el gravamen (*lien*) a favor de la provincia o del municipio por los impuestos de la última anualidad vencida y no pagada. En igual forma se producía la Ley Hipotecaria de Ultramar en su artículo 168. De manera que aun en aquel tiempo, o sea hasta 1902, las contribuciones sobre la propiedad inmueble no constituían un gravamen sobre la misma con excepción de aquella parte de la contribución correspondiente a la última anualidad vencida y no pagada.

Comentando el artículo 1923 del Código Civil español dice Manresa:

"*Créditos a favor del Estado por contribuciones e impuestos.*—El Estado tiene preferencia sobre los bienes inmuebles de los contribuyentes por el importe de la última anualidad, vencida y no pagada, de las contribuciones e impuestos que sobre ellos graviten, y desde luego se comprende que es una razón puramente fiscal la que sirve de fundamento a dicha preferencia.

" 'Tienen estos créditos, dice el Sr. Pedregal, verdadero carácter privilegiado, y son todavía reminiscencias de las suprimidas hipotecas tácitas, que contradice los principios más cardinales de la Ley Hipotecaria. Son obligaciones reales, sin que tomen este carácter de ningún contrato, y gravan directamente los bienes a que se refieren sin que se constituya la hipoteca especial que hasta a los menores se exige.'

"Siendo una razón puramente fiscal el motivo de esta preferencia, no tenemos para qué detenernos en el examen de sus precedentes ni

en la demostración de su justicia. La impone la ley de la necesidad para que el Estado pueda cumplir y desenvolver sus fines con la normalidad y regularidad debidas, y basta esta consideración para dejarla justificada. Por eso en todo tiempo el legislador ha venido a poner remedio a dicha necesidad, concediendo al Estado los medios de realizar pronta y preferentemente los tributos, contribuciones o impuestos que gravasen los bienes de los contribuyentes, en consideración al especial objeto a que se destinan, pues sin una ordenada recaudación de los mismos no es posible la vida regular de aquél ni el perfecto funcionamiento de sus organismos.

"En nuestro antiguo derecho, según ya hemos expuesto en otra ocasión, tenía el Estado hipoteca legal y general sobre todos los bienes del contribuyente para la debida seguridad de sus créditos por el concepto indicado, y ese privilegio fué respetado por la ley Hipotecaria, si no íntegramente, al menos en su esencia, dejando a salvo el derecho del Estado, reserva que *fué limitada a una anualidad, la última vencida y no pagada, y a los bienes a que correspondan las contribuciones e impuestos adeudados.* Y para su mayor aseguramiento y eficacia se mandó que se hiciera constar de una manera expresa en las escrituras que se otorgasen sobre dichos bienes la reserva de ese derecho. Hoy basta que verbalmente haga el Notario a las partes dicha advertencia, como las demás que fueren legales." (Bastardillas nuestras.) 12 Manresa, Comentarios al Código Civil (ed. de 1911), 705 *et seq.*

En 1902 el Código Civil Revisado, artículo 1824, continuó en igual forma que el español, limitando el gravamen solamente a la última anualidad vencida y no pagada. No ocurrió lo mismo con respecto al Código Político de igual fecha, que en su artículo 315, en lo pertinente, decía así:

"La contribución que se imponga sobre cada finca o parcela de terreno, e, inclusive, sobre cualesquiera mejoras que en ella existan o que puedan posteriormente hacerse en ella, constituirá el primer gravamen sobre dicha propiedad, el cual tendrá prelación sobre cualesquiera otros gravámenes sobre la misma, de cualquier clase que fuesen, ya pesen éstos sobre ella antes, ya pesen después que el gravamen determinado por dichas contribuciones."

Como se ve, existía un conflicto entre el artículo 315 del Código Político y el 1824 del Código Civil Revisado, ambos aprobados en 1902. Mientras en el primero, o sea en el

Código Político, se establecía el gravamen sin limitación alguna, de manera que cualquier cantidad que pudiese deber el contribuyente por concepto de contribuciones sobre su propiedad inmueble quedaba garantizada con un primer gravamen sobre la propiedad, en el segundo, o sea en el artículo 1824 del Código Civil, el gravamen continuaba limitado a la última anualidad vencida y no pagada.

En el 1907 se enmendó el artículo 315 del Código Político por la ley de 14 de marzo de dicho año, página 338, y entonces el gravamen que de acuerdo con dicho Código Político hasta entonces no tenía limitación alguna, quedó limitado, a virtud de la enmienda, a la anualidad corriente y a las tres anteriores. Pero continuó el conflicto entre los dos Códigos, Civil y Político, pues no se enmendó por dicha ley el artículo 1824 del primero, y nos encontramos entonces con que, mientras el artículo 315 del Código Político, según fué enmendado en 1907, declaraba que existía un gravamen a favor del Pueblo de Puerto Rico, por las tres últimas anualidades y la corriente, el artículo 1824 del Código Civil continuaba limitando el gravamen a la última anualidad, hasta que por la ley de 10 de marzo de 1910, página 127, se armonizaron ambos códigos, quedando desde entonces y hasta la fecha el gravamen contributivo limitado a las tres últimas anualidades y a la corriente.

Por consiguiente, cuando en 1930 el demandante adquirió la finca en cuestión, la adquirió solamente sujeta al gravamen impuesto por la ley, o sea a la anualidad corriente en la fecha en que adquirió y a no más de tres anualidades anteriores a la misma, si es que éstas eran adeudadas por el anterior dueño.

Claro es que si el anterior dueño, Anzalota, debía otras contribuciones en adición a las antes mencionadas, era ésta una deuda personal de Anzalota, no garantizada con gravamen alguno, y la cual no asumió en ningún momento el comprador demandante.

 Si luego de adquirida la finca, supongamos, por ejemplo, en el año 1934, el demandante hubiese constituído hipoteca o cualquier otro gravamen sobre la misma, este gravamen sólo hubiera quedado supeditado, de acuerdo con nuestra legislación actual, al gravamen a favor de El Pueblo de Puerto Rico sobre las tres últimas anualidades y la corriente. De suerte que si el acreedor hipotecario hubiese tenido que ejecutar la finca en cobro de la hipoteca en el 1936, y hubiese vendido en pública subasta, del producto de ésta solamente hubiese tenido que pagar por concepto de contribuciones a El Pueblo de Puerto Rico la contribución corriente en el año 1936 y la correspondiente a los tres años económicos anteriores a aquél. De igual modo si se le hubiese adjudicado la finca habría adquirido la misma sujeta al gravamen de la anualidad corriente y a las tres anteriores, no importa cuál fuese el número de anualidades adeudadas por el anterior dueño en exceso de las tres últimas y de la corriente.

En este caso, al adquirir la finca el demandante en 1930, adeudaba aquélla las contribuciones correspondientes a los años económicos 1928–29, 1929–30 y el corriente de 1930–31. Como la finca que se describe, radicada en el barrio Palmarejo, es la misma que se dice radica en el barrio Abras, claro es, de acuerdo con la ley antes mencionada, que el demandante la adquirió sujeta al pago de las contribuciones correspondientes a los años 1928–29 y 1929–30, por estar comprendidos éstos dentro de los tres años anteriores a la fecha de su adquisición. Como debía las contribuciones representadas por estos años contributivos y además adeudaba las correspondientes a los años 1930–31, 1931–32 y 1935–36, puesto que la consignación en la corte de distrito, en la forma en que se hizo, de la anualidad correspondiente al 1935–36 y al primer semestre del 1936–37 no equivalía al pago, actuó legalmente el colector de rentas internas al embargar la finca del demandante para el cobro de dichas contribuciones atrasadas.

Las contribuciones correspondientes a los años 1928 y siguientes no estaban prescritas porque la ley no fija término

de prescripción para el cobro de la contribución territorial. Por consiguiente, existen los errores primero y segundo señalados por los apelantes.

Habiendo llegado a esta conclusión, resulta académico discutir el tercer error, o sea determinar si la demanda aducía hechos constitutivos de causa de acción y si la corte carecía de jurisdicción para conocer del asunto.

En cuanto al cuarto error, o sea, que la corte inferior erró al dictar sentencia a favor del apelado, no hay duda alguna de que existió, habida cuenta de la conclusión a que hemos llegado al considerar el primer y segundo error.

*Por lo expuesto, procede en este caso revocar la sentencia apelada y en su lugar dictar otra declarando sin lugar la demanda, con costas, pero sin honorarios de abogado.*

El Juez Asociado Señor Travieso no intervino.