BANCO POPULAR DE PUERTO RICO, como Liquidador del BANCO TERRITORIAL Y AGRÍCOLA DE PUERTO RICO, demandante y apelado, *v.* FRANCISCO A. RAMÍREZ VEGA, Tesorero Interino de Puerto Rico, y RAFAEL FOURNIER, Colector de Rentas Internas de Santurce, P. R., demandados y apelantes.

Núm. 8001.—*Sometido:* Abril 17, 1940.  *Resuelto:* Noviembre 14, 1940.

*Hon. Procurador General George A. Malcom (Ex-Procurador General B. Fernández García, en el alegato) y M. Rodríguez Ramos, Sub-procurador Auxiliar, abogados de los apelantes; Monserrat, de la Haba & Monserrat, abogados del apelado.*

EL JUEZ ASOCIADO SEÑOR WOLF emitió la opinión del tribunal.

El Banco Popular de Puerto Rico, como liquidador del Banco Territorial y Agrícola de Puerto Rico, radicó una petición de *injunction* ante la Corte de Distrito de San Juan para que se prohibiera a Ramírez Vega, en su carácter de Tesorero Interino de Puerto Rico, que vendiera en pública subasta cierta finca para el cobro de las contribuciones adeudadas por la misma.

La corte expidió una orden de entredicho y, luego de celebrarse una vista, un *injunction* preliminar. Antes del juicio, las partes sometieron una estipulación en que hacían constar los hechos del caso y las varias cuestiones de derecho planteadas en el mismo. Las cuestiones eran todas de derecho.

Los hechos, tal cual han sido expuestos por la corte de distrito en su opinión, son los siguientes:

"En 1928 la Sucesión de Ramón H. Delgado era dueña de la finca que se describe en la demanda la que en el mismo año hipotecó al Banco Territorial y Agrícola para garantizar un pagaré por la cantidad de $10,000. La deuda hipotecaria en 4 de mayo de 1937 arrojaba un saldo a favor del acreedor por principal e intereses adeudados de $16,000. La finca debía las contribuciones territoriales impuestas sobre ella desde 1928 y para cobrar las nueve anualidades adeudadas, el Tesorero procedió a embargarla y se disponía a venderla en pública subasta, cuando el demandante, liquidador del Banco Territorial y Agrícola instituyó este procedimiento de *injunction* contra el Tesorero y el Colector de Rentas Internas de San Juan para impedir la venta, alegando para ello que el gobierno sólo tenía gravamen sobre dicha finca nada más que por las tres últimas anualidades y la corriente las cuales intentó pagar al demandante viéndose

impedido de hacerlo por haberse negado el Tesorero a recibir el pago a menos que éste se hiciese por la totalidad de las nueve anualidades adeudadas.''

El demandante suscitó las siguientes cuestiones:

''1.—Que la hipoteca legal y oculta a favor del Estado, por contribuciones territoriales al erario público, asegura solamente con perjuicio de tercero, tres anualidades y la corriente, suma única que puede cobrar el Hon. Tesorero de Puerto Rico con perjuicio de cualquier otro gravamen que del Registro aparezca constituído con anterioridad a su embargo para asegurar el pago de las contribuciones al erario público.

''2.—Que en perjuicio del demandante que es un tercero, de acuerdo con las prescripciones de la Ley Hipotecaria vigente, el demandado únicamente puede cobrar, con carácter preferente tres anualidades y la corriente de contribuciones.

''3.—Que la vía de apremio administrativo, por medio de la cual el demandado trata de cobrar las nueve anualidades de contribuciones adeudadas no es otra cosa que una ejecución de hipoteca oculta a favor del Estado.

''4.—Que el cobro de las nueve anualidades de contribuciones ya dichas constituye manifiesto perjuicio para el demandante en este pleito y en el de ejecución hipotecaria antes mencionado siendo las cantidades que se cobran en exceso de la subasta reconocida por ley como preferente.

''5.—Que los inmuebles amenazados de subasta para el cobro de contribuciones carecen de valor efectivo y real que justifique por parte del acreedor hipotecario el pago de las nueve anualidades de contribuciones adeudadas por ellos que intenta cobrar el Estado con carácter preferente al crédito hipotecario del demandante y contra lo preceptuado por la ley.

''6.—Que por medio de la subasta administrativa e insistiendo en el cobro de las nueve anualidades de contribuciones, el demandado intenta burlar los derechos que la ley tiene establecidos en protección de los intereses del demandante.

''7.—Que ninguno de los demandados está autorizado para cobrar por ley, del demandante, por concepto de las contribuciones en este caso, cantidad mayor de tres anualidades y la corriente, y que de permitirse tales actos por los demandados se causarían al demandante daños irreparables y se le obligaría a incoar una serie de pleitos y acciones en protección de sus intereses, privándolo indebidamente de su propiedad sin el debido proceso de ley.

"8.—Que los demandados tienen amplia oportunidad para defender sus derechos dentro del procedimiento ejecutivo hipotecario iniciado por el demandante y notificado a ellos, quedando así sus derechos a salvo.

"9.—Que si en virtud de subasta de apremio administrativo los bienes pasaran a manos de un tercero, el demandante se vería obligado a sostener una serie de pleitos y una multiplicidad de acciones ante los tribunales de justicia para poder dilucidar las cuestiones en controversia, al extremo de que, por no hacerse constar en el edicto de subasta del Estado, con claridad y precisión, el importe que con perjuicio de tercero puede cobrarse, en todo caso, por el procedimiento ejecutivo administrativo, otras personas inocentes serían llamadas y obligadas a sostener pleitos y acciones ante los Tribunales de Justicia, de permitirse por esta corte el acto que intentan realizar con la subasta de dicho inmueble los demandados.

"10.—Que dadas las circunstancias que median en este caso, y los hechos expuestos, los daños irreparables que ha de sufrir el demandante y la multiplicidad de acciones en que se vería envuelto, y no teniendo en ley ningún remedio rápido, adecuado y eficaz para evitar que por los demandados se realicen los actos de despojo y violación de las leyes vigentes, privando al demandante de su propiedad sin el debido procedimiento de ley en contravención con nuestra Carta Orgánica y la Constitución de los EE. UU. de América, es que se recurre al presente remedio extraordinario de *injunction.*"

Los demandados plantearon los siguientes puntos:

"1.—Que el Tesorero de Puerto Rico está facultado para cobrar todas las anualidades y contribuciones que se le adeudan sin que para ello sea obstáculo el que aparezca algún otro gravamen constituído con anterioridad al embargo para asegurar las contribuciones; y que a tal efecto no existe tercero alguno que pueda alegar perjuicio, y que aún existiendo tal tercero, se perjudique éste o no, su existencia no es óbice para que el Tesorero de Puerto Rico pueda proceder al cobro de las contribuciones en su totalidad.

"2.—Que mientras se hallen los inmuebles en poder y en propiedad del deudor contributivo, no existe perjuicio de tercero alguno en el cobro de todas las contribuciones adeudadas, no importa que el cobro abarque más de tres años y el corriente.

"3.—Que aun cuando el valor de las fincas que se intentan subastar por la vía de apremio administrativo es inferior a la cantidad cuyo pago se requiere por medio del ejecutivo hipotecario, como en

este caso, el deudor contributivo, su acreedor hipotecario o cualquier otra persona que se proponga sustituirle en dicho pago con la intención de saldar la deuda contributiva, tiene la obligación de satisfacer todas las anualidades de contribuciones adeudadas por el deudor (en este caso nueve anualidades de contribuciones vencidas).

"4.—Que la ley en este caso no establece derecho alguno protector de los intereses que alega tener el demandante.

"5.—Que el cobro que se propone hacer el Tesorero no es mayor que el que la ley asegura en perjuicio del demandante.

"6.—Que no existe daño irreparable en perjuicio del demandante y que, aun cuando existiera, los mismos serían el resultado de un cobro perfectamente legal y válido.

"7.—Que en lugar de verse obligado a una serie de pleitos y acciones al demandado le bastaría proteger sus intereses con la radicación de un pleito sobre devolución de contribuciones pagadas bajo protesta.

"8.—Que el cobro que realiza el Tesorero se ajusta perfectamente al debido proceso de ley a que tiene derecho el demandante.

"9.—Que los demandados no tienen oportunidad para defender sus derechos e intereses dentro del procedimiento ejecutivo hipotecario, ya que subastadas éstas en ejecución de hipoteca, el adquirente de las mismas tendría la obligación única de satisfacer tres anualidades y la corriente de contribuciones, mientras que fuera de la ejecución hipotecaria, e intereses, la finca pertenece al deudor contributivo y el Tesorero tiene derecho a ir contra todos sus bienes en cobro de todas las anualidades de contribuciones adeudadas, y la persona que a nombre y en sustitución del deudor intente saldar la deuda contributiva, viene obligada a satisfacerla en su totalidad.

"10.—Que los edictos de subasta publicados por el Estado tienen toda la claridad y toda la información que la ley y que las personas interesadas en la subasta de apremio administrativo tienen a su alcance con toda facilidad todos los informes pertinentes a dicha subasta.

"11.—Que la claridad y suficiencia de los informes suministrados a las personas interesadas, y la facilidad para obtenerlos no permitirían que persona alguna fuera inducida a error y se viera en consecuencia, envuelta en los pleitos de que habla el demandante.

"12.—Que de existir algún daño éste no es irreparable sino que de acuerdo con la ley el demandante podría resarcirse de él.

"13.—Que todos los actos de los demandados en este caso son perfectamente legales y constitucionales.

"14.—Que como defensa especial alegan los demandados que los hechos envueltos en este caso no constituyen causa suficiente para que la corte pueda expedir el auto de *injunction* solicitado."

La corte resolvió que El Pueblo de Puerto Rico tiene un gravamen preferente por las tres últimas anualidades y la corriente. Que, sin embargo, la hipoteca tenía preferencia sobre las otras contribuciones; que éstas eran una deuda personal de la Sucesión Delgado; que el acreedor hipotecario no estaba en el deber de pagar estas contribuciones para librar su hipoteca de un gravamen anterior; que el único deber del acreedor para que su hipoteca se convirtiera en un primer gravamen era pagar cuatro años de contribuciones; y concedió el *injunction* a condición de que el banco depositara en corte el importe de las contribuciones correspondientes a dichos cuatro años. Se autorizó al Tesorero para que vendiera la propiedad en pública subasta para el cobro de las contribuciones atrasadas sujeta a la hipoteca. La corte inferior dijo que este caso era similar al de *Durlach Bros., Inc.* v. *Domenech,* 47 D.P.R. 654, puesto que no se atacaba la legalidad de las contribuciones y el punto suscitado era que las contribuciones debían ser pagadas por otra persona, y citó también el caso de *First Nat. Bank of Valley City* v. *Kelly,* 162 N. W. 901, como similar. La corte de distrito igualmente consideró que la hipoteca era un derecho de propiedad que podía ser destruído o disminuído por los actos del Tesorero y que debía ser protegido por la corte.

Los demandados apelan y señalan seis errores.

Los tres primeros, que se discuten conjuntamente, leen así:

"1.—Declarar sin lugar la excepción previa de los demandados.

"2.—Resolver que era ilegal el cobro que trataban de efectuar los demandados.

"3.—Resolver que el demandante carecía de remedio en el curso ordinario de la ley."

Los demandados aceptan que los tribunales pueden expedir autos de *injunction* para impedir el cobro de contribucio-

nes en casos especiales; pero sostienen que el presente no es uno de esos casos, porque:

1.—La contribución era legal;
2.—No se causaban daños irreparables al demandante;
3.—Éste tenía un remedio ordinario en derecho.

Antes de entrar a discutir las cuestiones suscitadas, sería conveniente considerar que el peticionario no trata de impedir mediante *injunction* que el Tesorero cobre en absoluto las contribuciones. El peticionario no sostiene que la contribución es ilegal o inconstitucional, o que ha sido erróneamente impuesta. Lo que trata de hacer es impedir que el Tesorero cobre la contribución en tal forma que se perjudique su derecho de hipoteca.

La posición del Tesorero es que él puede embargar bienes para el cobro de contribuciones y vender éstos en pública subasta mientras pertenezcan al contribuyente. El Tesorero asume que el límite de las tres anualidades y la corriente prevalece tan sólo cuando la finca ha sido transferida a un adquirente o acreedor hipotecario.

La ley sobre la materia provee:

Código Político, artículo 315 (en lo pertinente):

". . . . La contribución que se impusiere por el corriente año económico y por los tres años económicos anteriores sobre cada finca o parcela de propiedad inmueble e, inclusive, sobre cualesquiera mejoras que en ella existan o que posteriormente se hicieren en la misma, constituirá el primer gravamen sobre dicha propiedad, el cual tendrá prelación sobre cualesquiera otros gravámenes sobre dicha finca o parcela de cualquier naturaleza que fuesen, ya pesen éstos sobre ella antes o después que el gravamen determinado por dicha contribución;"

Código Civil, artículo 1824 (inciso 1):

"Con relación a determinados bienes inmuebles y derechos reales del deudor, gozan de preferencia:

"1.—Los créditos a favor de El Pueblo de Puerto Rico, o de la correspondiente municipalidad, sobre los bienes de los contribuyentes,

por el importe de las tres últimas anualidades, y la corriente no pagada, de las contribuciones que graviten sobre ellos.''

Sección 1, Ley núm. 14 de agosto 24 de 1933, Sesión Extraordinaria, página 77:

''Por la presente se declaran gravámenes preferentes a toda otra carga o gravamen por contribuciones o por cualquier otro concepto, los créditos hipotecarios y los créditos refaccionarios, con excepción de las contribuciones sobre la propiedad gravada por tres años y la anualidad corriente.''

Bajo esos estatutos es imperativo llegar a la conclusión de que los gravámenes sobre la propiedad pesan en el siguiente orden:

(1) Las contribuciones por las tres últimas anualidades y la corriente.

(2) La hipoteca a favor del Banco Territorial.

(3) Cualesquiera otras contribuciones atrasadas.

La presunta venta haría que el gravamen puesto en tercer lugar subiera al segundo, y privaría al acreedor hipotecario del derecho concedídole por las leyes de Puerto Rico. Éste se vería obligado a pagar las contribuciones adeudadas por un tercero, es decir, por la Sucesión Delgado. Estas contribuciones son una obligación personal de dicha sucesión. *Martínez* v. *Sancho*, 53 D.P.R. 553. La doctrina sentada en el caso de *Durlach Brothers, Inc.* v. *Domenech, Tesorero*, 47 D.P.R. 654, encaja de plano en este caso, y los hechos expuestos constituyen suficientemente un ''caso espécial'' que justifica la expedición de un auto bajo esa autoridad.

■ Es necesario considerar si el peticionario tenía un remedio en derecho. El Tesorero sostiene que debió haber pagado bajo protesta.

De haberlo hecho así, el peticionario no hubiera podido recobrar las sumas pagadas, toda vez que la contribución era legal y efectivamente adeudada por la Sucesión Delgado. Este tribunal dijo en el caso de *Sucn. Franceschi* v. *Domenech, Tesorero*, 47 D.P.R. 471: ''En resumen, la acción esta-

tutaria para recobrar contribuciones pagadas bajo protesta no puede ser utilizada por un acreedor hipotecario como un remedio para proteger su gravamen superior de los resultados de una posible, amenazada o 'inminente venta de los bienes hipotecados en cobro de contribuciones, en caso de que tal venta no se efectúe sujeta al gravamen hipotecario.'' (Pág. 474.)

En el curso de su opinión el tribunal mencionó el caso de *Fajardo Sugar Company* v. *Domenech,* 45 D.P.R. 553. En dicho caso el Tesorero embargó ciertos bienes para recobrar contribuciones personales adeudadas por el dueño de los mismos. La Fajardo Sugar Company poseía una hipoteca sobre los referidos bienes y solicitó un *injunction* basada en que las contribuciones, siendo personales, no tenían preferencia sobre la hipoteca. El *injunction* fué declarado sin lugar y esta corte confirmó la sentencia basada en que la hipoteca tenía preferencia y en que en su consecuencia la venta debió efectuarse sujeta a la hipoteca.

Una vez que se paguen las contribuciones correspondientes a las tres últimas anualidades y la corriente, las de los años anteriores son, conforme sucedió en el caso de la Fajardo, una deuda para con el Tesorero que este funcionario puede cobrar mediante embargo y venta, sujeto a la hipoteca y a otros gravámenes. Si bien en el caso de la Fajardo el *injunction* fué denegado y en éste concedido, en ambos se permite que el Tesorero cobre las contribuciones mediante el procedimiento de apremio, siempre que no menoscabe un gravamen anterior, como el de la hipoteca.

█ El cuarto señalamiento dice así:

''4.—Resolver que el demandante tenía un derecho de propiedad.''

Los apelantes sostienen que una hipoteca puede convertirse en un derecho de propiedad, pero que no es tal hasta después de su ejecución.

Bajo las leyes de Puerto Rico, especialmente bajo la Ley Hipotecaria, la hipoteca al igual que el arrendamiento, uso,

usufructo o servidumbre, son derechos reales impuestos sobre inmuebles, y aunque si bien no son tan absolutos como el dominio, son, no obstante, derechos que merecen ser protegidos por la ley.

El quinto señalamiento es:

"5.—Resolver que este caso es análogo al de *Durlach Bros., Inc.* v. *Domenech,* 47 D.P.R. 654, y al de *Bank of Valley City* v. *Kelly,* 162 N. W. 901."

Ya se ha mencionado la analogía existente entre este caso y el de Durlach, supra. Si bien es cierto que el caso de Durlach puede distinguirse del presente, en cuanto a sus hechos, la aplicación que la corte inferior hizo de la doctrina expuesta en el mismo, fué correcta. En cuanto al segundo caso, la corte inferior copió de él lo siguiente:

"Los apelantes también sostienen que el cobro de las contribuciones sobre los bienes muebles en cuestión no debió haberse impedido mediante *injunction.* En apoyo de esto se llama nuestra atención a las anteriores decisiones de este tribunal, incluyendo las dos últimas, *Bismarck Water Supply Co.* v. *Barnes et al.,* 30 N. D. 555, 153 N. W. 454, L.R.A. 1916A 965, y *Merchants' State Bank of Velva* v. *McHenry County et al.,* 31 N. D. 108, 153 N. W. 386. Este caso no cae dentro de la doctrina de ésos. En el presente el demandante no es el deudor de las contribuciones ni en manera alguna está obligado a pagar las de su deudora hipotecaria, Westergaard Machinery Company, excepto en tanto en cuanto la propiedad hipotecádale está sujeta al gravamen estatutario. Simplemente trata de impedir que su garantía sea disminuída mediante una venta para pagar las contribuciones de otro. En la doctrina que prohibe a una persona restringir mediante *injunction* el cobro de contribuciones sobre bienes muebles adeudadas por ella no hay razón alguna que sea aplicable a una situación similar a la presentada en este caso.

"Aquí el demandante ha consignado todas las contribuciones que pesaban sobre el edificio. La sentencia de la corte de distrito reconoce plenamente el derecho del condado a imponer contribuciones sobre el edificio y admite que la venta puede efectuarse sujeta al gravamen de la hipoteca del demandante."

Es evidente que existe analogía entre dicho caso y el de autos. Debe desestimarse el quinto señalamiento.

Además, si la doctrina enunciada es correcta, la supuesta cita errónea de un caso no sería un error.

El sexto señalamiento es:

"6.—Dictar sentencia en favor del demandante, expidiendo el auto de *injunction* solicitado por éste."

No hay necesidad de ulterior discusión. El Tesorero está en el deber de separar de las anteriores las contribuciones correspondientes a las tres últimas anualidades y la corriente. Puede efectuar una subasta y mediante la misma cobrar el importe de los años anteriores vendiendo la propiedad en pública subasta sujeta a la hipoteca, o procediendo contra la Sucesión Delgado. La decisión de la corte de distrito se ajusta a la ley y a las opiniones de este tribunal, y hace justicia a todas las partes. Sin embargo, debe fijarse un término definido dentro del cual la parte demandante debe depositar en corte la cuantía de las contribuciones.

*La sentencia debe ser modificada en el sentido de conceder al demandante un término de treinta días para depositar en la corte inferior el importe de las contribuciones correspondientes a las tres últimas anualidades y a la corriente, y así modificada, confirmada.*

El Juez Presidente Sr. Del Toro disintió.*